## Case No. 5,728.

### GRAY et al. v. RUSSELL et al.

[1 Story, 11;[2] 2 Law Rep. 294.]

Circuit Court, D. Massachusetts. Oct. Term, 1839.

COPYRIGHT — WHAT MAY BE SUBJECT OF — VIOLATION — ABRIDGMENT — ADAM'S LATIN GRAMMAR.

1. Any compilation may be the subject of a copyright, provided the plan, arrangement, and combination of the materials be new.

[Cited in Emerson v. Davies, Case No. 4,436; Atwill v. Ferrett, Id. 640; Webb v. Powers, Id. 17,323; Greene v. Bishop, Id. 5,763; Lawrence v. Dana, Id. 8,136; Falk v. Donaldson, 57 Fed. 35.]

2. Though the original sources of information are open to the use of all persons, yet the use

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by William W. Story, Esq.]

of a particular compilation is not. As if a person prepare a map from original surveys. he cannot supersede the right of another person to make similar surveys to accomplish the same end; but no one, without such surveys, has a right to copy the map.

[Cited in Banks v. McDivitt. Case No. 961; Johnson v. Donaldson, 3 Fed. 25; Chapman v. Ferry, 18 Fed. 541.]

3. It is of no consequence in what form the works of another author are used, whether it be by a simple reprint, or by incorporating the whole, or a large portion thereof in some larger work.

4. The question of violation of copyright may depend upon the value, rather than the quantity of the selected materials; as where in an abridgment only the unimportant parts are omitted, or, under pretence of a review, the substance of an original work is given.

5. The author of an edition of Adam's Latin Grammar made certain additions and alterations in that work, and also prepared notes to it, which the author of a subsequent edition of the same work adopted. *Held*, that such adoption was an infringement of the copyright of the notes, inasmuch as the notes, though not new, had never before been collected and embodied.

6. Quaere, in what cases an abridgment will be regarded as a piracy of the copyright of an original work. A reporter has a copyright in his marginal notes and in the arguments of counsel as prepared and arranged in his work, though he has none in the opinions of the court, published under the authority of congress.

[Cited in Banks v. Manchester, 23 Fed. 146. Quoted in Callaghan v. Myers, 128 U. S. 649, 9 Sup. Ct. 185.]

Bill in equity. The bill set forth that the complainants, Harrison Gray, James Brown, and Charles Brown, booksellers and copartners, under the firm of Hilliard, Gray & Co., were the proprietors of the copyright and publishers of a certain book, entitled "Adam's Latin Grammar, with Some Improvements and the Following Additions: Rules for the Right Pronunciation of the Latin Language; a Metrical Key to the Odes of Horace; a List of Latin Authors Arranged According to the Different Ages of Roman Literature; Tables Showing the Value of the Various Coins, Weights, and Measures, Used among the Romans. By Benjamin A. Gould, Master of the Public Latin School of Boston." That the complainants became proprietors, in their own right, of said copyright, on the seventh day of March, 1833, by assignment from Cummings, Hilliard & Co., the original proprietors, and ever since that time have been, and now are, such sole proprietors, and ever since the said seventh of March, have had, and now have, the exclusive right of printing, publishing, and exposing for sale and selling copies of the improvements and additions, made and originally published in said edition of said book, entitled as aforesaid. In which edition, the said Benjamin A. Gould, the editor of the same, made the following among other additions and improvements, viz: he prefixed rules for accent and rules for the sound of the vowels; detached from the original text and omitted all that related to English grammar, as distinguished from Latin; marked the quantity of the penulti-

mate vowel on every Latin word throughout the book, where it was not determined by being placed before another vowel, a double consonant or two single consonants; made divisions of the text by introducing new heads in numerous places; divided the paragraphs in numerous instances, and distinguished parts as more important, by printing them in larger type; in many instances transposed a part of the text of the original work into notes; gave the English of the nouns declined as paradigms; prefixed remarks on gender to the declension of nouns; arranged the termination of each declension in columns, instead of putting them in transverse lines, as in the original work; added an additional termination in the vocative and ablative cases in the word "Anchises"; declined the words, "Opus," "Parens," "Dogma," "Arundo," "Dido," "Calcar," "Aetas," and "Vox," in the third declension, at full length, and gave the English in full to the two first; made a distinct head of heterogeneous nouns and heteroclite nouns, and made remarks under the latter; declined at length the words, "Respublica," "Jusjurandum," "Paterfamilias," "Jupiter," "Bos," "Orpheus," "Oedipus," "Achilles" or "Achilleus," under the head of heteroclites; added the noun "Veprem" to the list of defective nouns under the head of "Diptota"; gave the English of the adjectives, declined as paradigms; declined at length the adjectives "Prudens" and "Plus"; added the Arabic and Roman numerals in the table of the numeral adjectives; changed the translation of the imperfect and future tenses of the verb; altered the arrangement or order of the principal parts of the verb in conjugating it; gave the entire Latin word in each voice, mood, tense, person, and number, and a full English translation in the paradigms in the second, third, and fourth conjugations; gave the word "Capio" as a paradigm displayed at full length of verbs in "io," in the third conjugation; added rules on the subject of the regular formation of the tenses of the verbs; added the paradigm "Prosum" under irregular verbs; gave a new form of expression to the 50th, 51st, 52d, and 56th rules of syntax; added observations on the 50th, 53d, and 54th rules of syntax; made a new distinct head of "Prosody," and of "Rules for the Quantity"; made a new definition of prosody and accent, and a numerical arrangement and new observations under the head of "Prosody"; gave an analysis or metrical key of the various combinations of verse used in the Odes of Horace, with an index to the Odes, omitting the analysis of the kinds of verse used by Buchanan; gave an appendix on the subject of punctuation, abbreviations, division of the Roman months, tables of Roman coins, weights, and measures; and made other alterations and improvements in the said original work.

The bill went on to allege, that the plaintiffs being possessed of the copyright of said

book so as aforesaid, John B. Russell, Lemuel Shattuck, and John D. W. Williams, booksellers, and copartners under the name and style of Russell, Shattuck & Company, without the consent or allowance of the plaintiffs, on the 14th day of August, 1836, and before and since that day, exposed to sale and sold copies of a work entitled, "Adam's Latin Grammar, with Numerous Additions and Improvements, Designed to Aid the More Advanced Student by Fuller Elucidation of the Latin Classics. By C. D. Cleveland, A. M., Late Professor of the Latin Language and Literature in the University of the City of New York." The bill then alleged, that the last named work is a copy of the said improvements and additions in the first mentioned work; and the several particulars are pointed out with minuteness; the bill concluding with the allegation, that the said "Cleveland's edition has taken, in most instances literally, and in others, substantially, making very slight alterations, from the matter added in said Gould's edition to Adam's original work, on the following pages of said Cleveland's edition, viz: pages 11, 12, 17, 18, 22, 30, 32, 33, 34, 58, 69, 70, 72, 75, 92, 95, 101, 102, 103, 104, 105, 106, 107, 109, 110, 111, 113, 114, 115, 116, 117, 118, 119, 272, 273, 274, 298, 303, 305, 306, 307, 313, 314, 315, 316, 326, 329, 330, 331, 332, 333, and in the appendix to the same to the amount of thirty pages or more, being a very large proportion of the additions, alterations, and improvements made by the said Gould in his edition of said work." The bill concluded with a prayer for an injunction on the defendants, from selling, or exposing to sale, any copies of said Cleveland's edition of said work; and that the defendants be ordered to render an account of the copies of the same that they have sold, and to pay over the profits of such sales to the plaintiffs, and to deliver up what copies they may have on hand, and to pay the costs.

The bill was entered at the October term of this court, 1836. At the October term, 1838, it was ordered, that the case be referred to a master to examine and report the coincidences and differences of the plaintiffs' and the defendants' grammars; how far the author of the defendants' grammar has used the plaintiffs' grammar in compiling his own, and how far he has made use of similar or the same materials independently of any use, or with how great a use, of the plaintiffs' grammar; and to report the evidence in the case as far as either party may request, and his conclusion thereupon; whether the whole or any part, and if any, what parts of the defendants' grammar are an infringement of the plaintiffs' copyright. At the present term of the court, the master made his report, which concluded as follows:—"As I have been requested by the complainants' counsel to report the amount of matter taken by the defendants from this work, I accordingly find, that substantially the whole of what was added by Mr. Gould to the old editions of Adam, (whether from one or another source, or as matter more purely of invention on his own part,) has been adopted by the defendants. How far this matter was drawn from other sources, and from authors alike open to the complainants and defendants, appears under each of the foregoing heads. How far the use of such matter by the defendants, in the same form or arrangement, or in the same phraseology, or in different phraseology, (which seem to be the main questions arising in the case,) constitutes an infringement of copyright, I conceive to belong solely to the province of the court."

Phillips & Robins, for plaintiffs.
John Pickering, for defendants.

STORY, Circuit Justice. The question now before the court is upon the confirmation of the master's report. No exception has been taken to the facts and detailed statements in the master's report; and, therefore, the point is narrowed down to the inquiry, whether the conclusion drawn from these facts by the master is correct. I am of opinion, that it is, and that the report ought to be confirmed; and, as consequent thereon, that a perpetual injunction ought to be granted, prohibiting the sale of the edition of Cleveland's Adam's Latin Grammar in the pleadings mentioned by the defendant.

The argument proceeds mainly upon this ground, that there is nothing substantially new in Mr. Gould's notes to his edition of Adam's Latin Grammar; and that all his notes in substance, and many of them in form, may be found in other works antecedently printed. That is not the true question before the court. The true question is, whether these notes are to be found collected and embodied in any former single work. It is admitted, that they are not so to be found. The most, that is contended for, is, that Mr. Gould has selected his notes from very various authors, who have written at different periods, and that any other person might, by a diligent examination of the same works, have made a similar selection. It is not pretended, that Mr. Cleveland undertook or accomplished such a task by such a selection from the original authors. Indeed, it is too plain for doubt, that he has borrowed the whole of his notes directly from Mr. Gould's work; and so literal has been his transcription, that he has incorporated the very errors thereof.

Now, certainly, the preparation and collection of these notes from these various sources, must have been a work of no small labor, and intellectual exertion. The plan, the arrangement, and the combination of these notes in the form, in which they are collectively exhibited in Gould's Grammar, belong exclusively to this gentleman. He is, then, justly to be deemed the author of them in their actual form and combination,

and entitled to a copyright accordingly. If no work could be considered by our law as entitled to the privilege of copyright, which is composed of materials drawn from many different sources, but for the first time brought together in the same plan and arrangement and combination, simply because those materials might be found scattered up and down in a great variety of volumes, perhaps in hundreds, or even thousands of volumes, and might, therefore, have been brought together in the same way and by the same researches of another mind, equally skilful and equally diligent,—then, indeed, it would be difficult to say, that there could be any copyright in most of the scientific and professional treatises of the present day. What would become of the elaborate commentaries of modern scholars upon the classics, which, for the most part, consist of selections from the works and criticisms of various former authors, arranged in a new form, and combined together by new illustrations, intermixed with them? What would become of the modern treatises upon astronomy, mathematics, natural philosophy, and chemistry? What would become of the treatises in our own profession, the materials of which, if the works be of any real value, must essentially depend upon faithful abstracts from the Reports, and from juridical treatises, with illustrations of their bearing. Blackstone's Commentaries is but a compilation of the laws of England, drawn from authentic sources, open to the whole profession; and yet it was never dreamed, that it was not a work, which, in the highest sense, might be deemed an original work; since never before were the same materials so admirably combined, and exquisitely wrought out, with a judgment, skill, and taste absolutely unrivalled. Take the case of the work on insurance, written by one of the learned counsel in this cause, and to which the whole profession are so much indebted; it is but a compilation with occasional comments upon all the leading doctrines of that branch of the law, drawn from reported cases, or from former authors; but combined together in a new form, and in a new plan and arrangement; yet, I presume, none of us ever doubted, that he was fully entitled to a copyright in the work, as being truly, in a just sense, his own.

There is no foundation in law for the argument, that because the same sources of information are open to all persons, and by the exercise of their own industry and talents and skill, they could, from all these sources, have produced a similar work, one party may at second hand, without any exercise of industry, talents, or skill, borrow from another all the materials, which have been accumulated and combined together by him. Take the case of a map of a county, or of a state, or an empire; it is plain, that in proportion to the accuracy of every such map, must be its similarity to, or even

its identity with, every other. Now, suppose a person has bestowed his time and skill and attention, and made a large series of topographical surveys in order to perfect such a map, and has thereby produced one far excelling every existing map of the same sort. It is clear, that notwithstanding this production, he cannot supersede the right of any other person to use the same means by similar surveys and labors to accomplish the same end. But it is just as clear, that he has no right, without any such surveys and labors, to sit down and copy the whole of the map already produced by the skill and labors of the first party, and thus to rob him of all the fruit of his industry, skill, and expenditures. See Wilkins v. Aikin, 17 Ves. 424, 425; Eden, Inj. pp. 282, 283, c. 13; 2 Story, Eq. Jur. §§ 939–942. It would be a downright piracy. Neither is it of any consequence in what form the works of another author are used; whether it be by a simple reprint or by incorporating the whole or a large portion thereof in some larger work. Thus, for example, if in one of the large encyclopaedias of the present day, the whole or a large portion of a scientific treatise of another author, as, for example, one of Dr. Lardner's, or Sir John Herschell's, or Mrs. Somerville's treatises, should be incorporated, it would be just as much a piracy upon the copyright, as if it were published in a single volume.

In some cases, indeed, it may be a very nice question, what amounts to a piracy of a work, or not. Thus, if large extracts are made therefrom in a review, it might be a question, whether those extracts were designed bonâ fide for the mere purpose of criticism, or were designed to supersede the original work under the pretence of a review, by giving its substance in a fugitive form. The same difficulty may arise in relation to an abridgment of an original work. The question, in such a case, must be compounded of various considerations; whether it be a bonâ fide abridgment, or only an evasion by the omission of some unimportant parts; whether it will, in its present form, prejudice or supersede the original work; whether it will be adapted to the same class of readers; and many other considerations of the same sort, which may enter as elements, in ascertaining, whether there has been a piracy, or not. Although the doctrine is often laid down in the books, that an abridgment is not a piracy of the original copyright; yet this proposition must be received with many qualifications. See 2 Story, Eq. Jur. §§ 939–942; Sweet v. Shaw (before the vice chancellor, in 1839) Eng. Jur. 1839, p. 217. In many cases, the question may naturally turn upon the point, not so much of the quantity, as of the value of the selected materials. As was significantly said on another occasion,—"Non numerantur, ponderantur." The quintessence of a work may be piratically extract-

ed, so as to leave a mere caput mortuum, by a selection of all the important passages in a comparatively moderate space. In the recent case of Bramwell v. Halcomb. 3 Mylne & C. 737, it was held, that the question, whether one author has made a piratical use of another's work, does not necessarily depend upon the quantity of that work, which he has quoted, or introduced into his own book. On that occasion, Lord Cottenham said: "When it comes to a question of quantity, it must be very vague. One writer might take all the vital part of another's book, though it might be but a small proportion of the book in quantity. It is not only quantity, but value, which is looked to. It is useless to look to any particular cases about quantity." See the lord chancellor's opinion in Bell v. Whitehead, Eng. Jur. 1839, p. 68; Sweet v. Shaw (before the vice chancellor, 1839) Id. 217. The same subject was a good deal considered by the same learned judge in Saunders v. Smith, 3 Mylne & C. 711, 728, 729, with reference to copyright in Reports; and how far another person was at liberty to extract the substance of such reports, or to publish select cases therefrom, even with the notes appended. In the case of Wheaton v. Peters, 8 Pet. [33 U. S.] 591, the same subject was considered very much at large. It was not doubted by the court, that Mr. Peters' Condensed Reports would have been an infringement of Mr. Wheaton's copyright, (supposing that copyright properly secured under the act,) if the opinions of the court had been, or could be, the proper subject of the private copyright by Mr. Wheaton. But it was held, that the opinions of the court, being published under the authority of congress, were not the proper subject of private copyright. But it was as little doubted by the court, that Mr. Wheaton had a copyright in his own marginal notes, and in the arguments of counsel as prepared and arranged in his work. The cause went back to the circuit court for the purpose of further inquiries as to the fact, whether the requisites of the act of congress had been complied with or not by Mr. Wheaton. This would have been wholly useless and nugatory, unless Mr. Wheaton's marginal notes and abstracts of arguments could have been the subject of a copyright (for that was all the work, which could be the subject of copyright); so that if Mr. Peters had violated that right, Mr. Wheaton was entitled to redress.

But we are spared from any nice inquiries of this sort in the present case. The master's report finds that the substance of all Mr. Gould's notes are used in Mr. Cleveland's book, and for the most part literally copied. It is, therefore, a clear infringement of Mr. Gould's copyright, not, indeed, in Adam's Latin Grammar, (for he has none in that,) but in his own notes, first collected together by him in their present form, and

in the plan and arrangements, (also his own,) in which they are actually embodied. Under these circumstances, I shall decree a perpetual injunction. In consideration, that the defendants have already struck out of their editions of Mr. Cleveland's book now sold by them, all the notes of Mr. Gould, and that the defendants are insolvent, the plaintiffs have waived any decree for an account. I shall, therefore, pass that over, and only decree costs for the plaintiffs. Decree accordingly.