## Case No. 13,497.

STORY v. HOLCOMBE et al.

[4 McLean, 306; 1 5 West. Law J. 145.]

Circuit Court, D. Ohio. Nov. Term, 1847.

COPYRIGHT—ABRIDGMENT—COMPILATION — PART INFRINGEMENT.

1. Every abridgment of a work, however fair, does more or less affect the sale of the original work.

2. The theory that such a work adds to the value of the original work, by making it more extensively known, is unfounded in fact. A copyright of an author should be protected by the same rule that applies to a patented machine.
[Cited in Lawrence v. Dana, Case No. 8,136.]

3. Any machine, however differently constructed, which acts upon the same principle, violates the patent.
[Cited in Drury v. Ewing, Case No. 4,095.]

4. A fair abridgment contains the principle of the original work. A compiler or reviewer can not extract from an author so as to convey the same knowledge as the original book.
[Cited in Lawrence v. Dana, Case No. 8,136.]

5. There is a clear distinction between an abridgment and a compilation. The abridgment necessarily adopts the same arrangement, and conveys the same knowledge in a condensed form.

6. A compiler can neither adopt the arrangement, nor convey by his extracts the same knowledge.
[Cited in Greene v. Bishop, Case No. 5,763.]

7. A fair abridgment, though it injure the sale of the original book, is lawful.

8. The same effect, by a compiler, renders his work unlawful.

9. The intent with which extracts are made, can be of little or no importance.
[Cited in Harper v. Shoppell, 26 Fed. 520.]

10. A part of a book may be an infringement, and the other parts not.
[Cited in Greene v. Bishop, Case No. 5,763; Lawrence v. Dana, Id. 8,136.]

11. In such a case the relief will only extend to the part considered to be an infringement.
[Cited in Greene v. Bishop, Case No. 5,763; Lawrence v. Dana, Id. 8,136; West Pub. Co. v. Lawyers' Co-Operative Pub. Co., 64 Fed. 364.]

---

* [Reported by Hon. John McLean, Circuit Justice.]

1 [Reported by Hon. John McLean, Circuit Justice.]

[2] [Complainants are executors of Joseph Story, deceased, who was the author and proprietor of the copyright of "Commentaries on Equity Jurisprudence." Defendants are the authors and publishers of "An Introduction to Equity Jurisprudence, on the Basis of Story's Commentaries." The bill alleges that the latter is an infringement upon the former in three respects: (1) That the work is derived from the Commentaries; (2) that its plan, combination, and arrangement of materials, are copied therefrom; (3) that the one is pirated from the other. The prayer is for an injunction, account, surrender of copies, and general relief. Defendants answer, admitting title in plaintiffs, but denying the charge of infringement. They allege that their work is a fair and bona fide abridgment of the Commentaries, such as they have a right to make. General replication. At the July term, 1846, after argument, on motion for a preliminary injunction, the case was referred to E. D. Mansfield, a special master commissioner, to report upon the usual matters required in such cases, in order to enable the court to determine how much, if any, of defendants' work, is a piracy from the plaintiffs' work. [Case No. 13,496.] The master reported, and the complainants filed exceptions, denying that the facts were correctly found, and alleging that the report was indefinite and argumentative. But these exceptions were waived at the hearing.

[The two principal questions presented by the argument were: (1) Whether, in this country, even a fair abridgment of a scientific work, is the subject of copyright. (2) If so, whether the work of defendants is a fair abridgment of the work of complainants.

[T. Walker and J. C. Wright, for complainants.

[J. P. Holcombe and W. Y. Gholson, for defendants.] [2]

McLEAN, Circuit Justice. The plaintiffs in this case complain that the defendants, in printing and publishing, "An Introduction to Equity Jurisprudence, on the Basis of Story's Commentaries, etc., by James P. Holcombe," have infringed the copy right in Judge Story's "Commentaries on Equity Jurisprudence," and they pray that the defendants may be enjoined, etc. The defense set up is, that the work complained of is a bona fide abridgment of the Commentaries. The special master, to whom both works were referred, reports, that "the chapters and the subjects are the same in both." He states that the "Equity Jurisprudence" of Judge Story contains one thousand eight hundred and fifty-six octavo pages, including notes; and that the "Introduction to Equity," by Mr. Holcombe, contains three hundred and forty-eight octavo pages, including notes. That "a page in Holcombe contains a little more than one of Story; that, reduced to the

[2] [From 5 West. Law J. 145.]

same sized page, the ratio in the amount of matter in Holcombe's book to that of Story, is about in the relation of two to nine; that, in the entire work of Story, there are two hundred and twenty-six pages, constituting nearly an eighth part, on which there is some matter which has been extracted in the same language, or very nearly so, into the book of Mr. Holcombe. This matter comprises eight hundred and seventy-nine lines of Mr. Holcombe's book, which is about equivalent to twenty-four pages of Holcombe and thirty of Story, which makes one-fifteenth part of Holcombe and one-sixtieth of Story. This matter is found in scattered paragraphs in the first third of Holcombe's book." And the master states, that "all the other portions of the 'Equity Jurisprudence' of Judge Story have been abridged by Mr. Holcombe without any transcription of the common language or words of Story. The part so abridged by Holcombe comprehends two-thirds of his book." The first hundred pages of Mr. Holcombe's book, which comprises ten chapters, contain about two thousand lines, exclusive of notes, about nine hundred of which are copied from Judge Story's Commentaries. From the succeeding chapters of Story, Mr. Holcombe has copied certain passages; but generally he has abridged the matter so as to reduce it, in his own language, to a small space. Very few, if any of the notes are taken from Story. After a very able and laborious examination of the two works, the special master comes to the conclusion that there is no infringement; but that the work of Holcombe is a fair abridgment of the Commentaries of Judge Story. It was agreed that the cause should be argued and decided on its merits, and not on exceptions to the report of the master.

This controversy has caused me great anxiety and embarrassment. On the subject of copyright, there is a painful uncertainty in the authorities; and indeed there is an inconsistency in some of them. That the complainants are entitled to the copyright which they assert in their bill, is not controverted by the defendants. The decision must turn on the question of abridgment. If this were an open question, I should feel little difficulty in determining it. An abridgment should contain an epitome of the work abridged—the principles, in a condensed form of the original book. Now it would be difficult to maintain that such a work did not affect the sale of the book abridged. The argument that the abridgment is suited to a different class of readers, by its cheapness, and will be purchased on that account by persons unable and unwilling to purchase the work at large, is not satisfactory. This to some extent may be true; but are there not many who are able to buy the original work, that will be satisfied with the abridgment? What law library does not contain abridgments and digests, from Viners and Comyns down

to the latest publications. The multiplication of law reports and elementary treatises, creates a demand for abridgments and digests; and these being obtained, if they do not generally, they do frequently prevent the purchase of the works at large. The reasoning on which the right to abridge is founded, therefore, seems to me to be false in fact. It does, to some extent in all cases, and not unfrequently to a great extent, impair the rights of the author—a right secured by law.

The same rule of decision should be applied to a copyright as to a patent for a machine The construction of any other machine which acts upon the same principle, however its structure may be varied, is an infringement on the patent. The second machine may be recommended by its simplicity and cheapness; still, if it act upon the same principle of the one first patented, the patent is violated. Now an abridgment, if fairly made, contains the principle of the original work, and this constitutes its value. Why, then, in reason and justice, should not the same principle be applied in a case of copyright as in that of a patented machine? With the assent of the patentee, a machine acting upon the same principle, but of less expensive structure than the one patented, may be built: and so a book may be abridged by the author, or with his consent, should a cheaper work be wanted by the public. This, in my judgment, is the ground on which the rights of the author should be considered.

But a contrary doctrine has been long established in England, under the statute of Anne, which, in this respect, is similar to our own statute; and in this country the same doctrine has prevailed. I am, therefore, bound by precedent; and I yield to it in this instance, more as a principle of law, than a rule of reason or justice.

The infringement of a copyright does not depend so much upon the length of the extracts as upon their value. If they embody the spirit and the force of the work in a few pages, they take from it that in which its chief value consists. This may be done to a reasonable extent by a reviewer, whose object is to show the merit or demerit of the work. But this privilege can not be so exercised as to supersede the original book. Bramwell v. Halcomb, 3 Mylne & C. 737; Folsom v. Marsh [Case No. 4,901]. In the language of Godson (page 352), the extracts must not be made too freely. Sufficient may be taken to form a correct idea of the whole: but no one is allowed, under the pretense of quoting, to publish either the whole or the principal part of another man's composition; and therefore a review must not serve as a substitute for the book reviewed. If so much be extracted, that the article communicates the same knowledge as the original work, it is an actionable violation of literary property. Wilkins v. Aikin, 17 Ves. 422; Roworth v. Wilkes, 1 Camp. 97. In Folsom v. Marsh [supra] it is said: "No one can doubt

that a reviewer may fairly cite largely from the original work, if his design be really and truly to use the passage for the purposes of fair and reasonable criticism. On the other hand, it is as clear, that if he thus cites the most important parts of the work, with a view not to criticise, but to supersede the use of the original work, and substitute the review for it, such a use will be deemed in law a piracy." This doctrine seems to consider the intention with which the citations are made as necessary to an infringement. In Cary v. Kearsley, 4 Esp. 170, Lord Ellenborough takes the same view. But I can not perceive how the intention with which extracts are made, can bear upon the question. The inquiry is, what effect must the extracts have upon the original work. If they render it less valuable by superseding its use, in any degree, the right of the author is infringed: and it can be of no importance to know with what intent this was done. Extracts, made for the purpose of a review, or a compilation, are governed by the same rule. In neither case can they be extended so as to convey the same knowledge as the original work.

But the great question in the case is, whether the book of Mr. Holcombe is a fair abridgment of that of Judge Story. The word abridged means "to epitomize," "to reduce," "to contract." In Strahan v. Newberry [In re Newbery], Lofft, 775, Chancellor Apsley said, "to constitute a true and proper abridgment of a work, the whole amount must be preserved in its sense, and then the act of abridgment is an act of the understanding, employed in carrying a larger work into a smaller compass." In this view Mr. Justice Blackstone concurred, who seems to have been consulted by the chancellor. Mr. Justice Story says, in Folsom v. Marsh: "So it has been decided, that a fair and bona fide abridgment of an original work, is not a piracy of the copyright of the author; but then, what constitutes a fair and bona fide abridgment, in the sense of the law, is one of the most difficult points, under particular circumstances, which can arise for judicial discussion. It is clear, that a mere selection, or different arrangement of parts of the original work, so as to bring the work into a smaller compass, will not be held to be such an abridgment. There must be real substantial condensation of the materials, and intellectual labor and judgment bestowed thereon, and not merely the facile use of the scissors, or extracts of the essential parts, constituting the chief value of the original work." In Gyles v. Wilcox, 2 Atk. 143, Lord Hardwicke said: "Where books are colorably shortened only, they are undoubtedly within the meaning of the act of parliament, and are a mere evasion of the statute, and can not be called an abridgment."

A fair abridgment of any book is considered a new work, as to write it requires labor and exercise of judgment. It is only new in

the sense that the view of the author is given in a condensed form. Such a work must not only contain the arrangement of the book abridged, but the ideas must be taken from its pages. It must be in good faith an abridgment, and not a treatise, interlarded with citations. To copy certain passages from a book, omitting others, is in no just sense an abridgment of it. It makes the work shorter, but it does not abridge it. The judgment is not exercised in condensing the views of the author. His language is copied, not condensed; and the views of the writer, in this mode, can be but partially given. To abridge is to preserve the substance, the essence of the work, in language suited to such a purpose. Gould's Abridgment of Allison's History of Europe gives all the material facts of the original work, covering the whole line of the narrative: and this, in a legal sense, may be called an abridgment.

In the argument it was insisted, that an elementary work is not a proper subject for abridgment. There may be works which are not susceptible of this process. Treatises on the exact sciences may constitute an exception; but works on law, elementary or otherwise, are not within the exception. Hale's Pleas of the Crown, Blackstone's Commentaries, and Kent's, have been abridged, and other works of a similar character. What is the character of the work complained of? Upon its title-page it does not purport to be an abridgment, but "An Introduction to Equity Jurisprudence, on the Basis of Story's Commentaries;" and in the preface the author says: "It is not intended to supply the place of the Commentaries, with any class of readers, but to serve simply as an introduction, a companion and a supplement to their study. The text is substantially an abridgment of that work. The same general plan and arrangement has been pursued, and the elementary principles which are supposed to possess most practical value, selected and presented, with appropriate illustrations, in a greatly condensed form. The author has felt at liberty to make very considerable alterations and additions (entirely, however, of an elementary character), believing that this course would not diminish, but increase the adaptation of his own work, to be a companion to the study of the Commentaries." If this book were intended to be a mere abridgment of the Commentaries, the fact is not indicated in the title. Within my knowledge no abridgment has been made of any book which has not been so entitled. An introduction may be an exordium, a preface, or the preliminary part of a book; but it is not an abridgment. The author says "the text is substantially an abridgment of the Commentaries;" but he also says, that "he has felt at liberty to make very considerable alterations and additions." Alterations of the original work, and additions to the text, are not appropriate to an abridgment. In saying, therefore, that "the text is substan-

tially an abridgment," Mr. Holcombe could have meant nothing more than that, in writing his book, he followed the arrangement of the Commentaries, extracting certain parts, condensing others, with "very considerable alterations and additions" of his own. A supplement to the Commentaries, which Mr. Holcombe says, in some sense is the character of his work, may supply defects in the original; but it can in no sense be considered an abridgment. This remark seems to have been made in reference to the notes added by the author.

It may not be essential to exclude extracts entirely from an abridgment; but in making extracts merely, there is no condensation of the language of the author, and consequently there is no abridgment of it. Much looseness is found in the decisions upon this subject. Some of the judges would seem to consider, that where a book is greatly reduced in its size, though made up principally of extracts, it is an abridgment. In a book of reports, such as "Bacon's Abridgment," the language of the court is necessarily adopted often to show the principle of the decision. But the same necessity does not exist, and the same license can not be exercised in abridging an elementary work. In the case of the assignees of Dodsley v. Kinnersley, 1 Amb. 402, it was held, that abstracts made from a tale written by Johnson, called the "Prince of Abyssinia," did not infringe the copyright; but that decision was much influenced by the fact, that the author himself had published similar abstracts in a periodical paper. In Emerson v. Davies [Case No. 4,436], Judge Story says: "To amount to an infringement, it is not necessary that there should be a complete copy or imitation in use throughout; but only that there should be an important and valuable portion which operates injuriously to the copyright of the plaintiff."

All the authorities agree that to abridge requires the exercise of the mind, and that it is not copying. To compile is to copy from various authors into one work. In this the judgment may be said to be exercised to some extent in selecting and combining the extracts. Such a work entitles the compiler, under the statute, to a right of property. This right may be compared to that of a patentee, who, by a combination of known mechanical structures, has produced a new result.

Between a compilation and an abridgment, there is a clear distinction; and yet it does not seem to have been drawn in any opinion cited. A compilation consists of selected extracts from different authors: an abridgment is a condensation of the views of the author. The former can not be extended so as to convey the same knowledge as the original work: the latter contains an epitome of the work abridged and consequently conveys substantially the same knowledge. The former can not adopt the arrangement of the works cited; the latter must adopt the arrangement of the

work abridged. The former infringes the copyright, if matter transcribed, when published, shall impair the value of the original book: a fair abridgment, though it may injure the original, is lawful. 1 Brown, Ch. 451; Gyles v. Wilcox, 2 Atk. 141. There is, then, a right which the abridger may exercise, far beyond that of a mere compiler. His labor is of a different kind, and of a higher order. It is therefore important that the works of these two characters should not be so blended as to place them upon the same footing: and yet in many of the decisions, no distinction is made between them. The same facts and reasoning are applied indiscriminately to both cases; and not unfrequently there is a confusion in the argument, which tends more to perplex than to enlighten the reader. In the case of Folsom v. Marsh, above cited, Mr. Justice Story says: "It seems to me, therefore, that is a clear invasion of the right of property of the plaintiffs, if the copying of parts of a work, not constituting a major part, can ever be a violation thereof; as, upon principle and authority, I have no doubt it may be. If it had been the case of a bona fide abridgment of the work of the plaintiffs, it might have admitted of a very different consideration." It is said that in many parts of the Commentaries there are citations from other works. This is true. And who could write a book entirely new upon jurisprudence? Principles, not familiar to the profession, could be of little value and of no authority. No author, by copying from others, can withdraw from general use, that which has been given to the public. Judge Story did not intend his book to be an abridgment, but a treatise on jurisprudence; and the approbation of this work by the profession, in this country and in England, is high evidence of its merit, and of the great learning and ability of the author.

Whatever doubts may have been formerly entertained, it is now clear, that a book may, in one part of it, infringe the copyright of another book, and in other parts be no infringement; and in such a case, the remedy will not be extended beyond the injury. Lord Hardwicke once laid down a doctrine contrary to this; but that opinion has been overruled by subsequent decisions. Nearly one half of the text, in the first hundred pages of Mr. Holcombe's book, appears to have been extracted from Story. That this was done by him under a conviction that he was exercising a common right, no one acquainted with his legal talent and honorable bearing, can doubt. But these constitute no criterion for the decision of the case. That the view of Mr. Holcombe in this respect, is not without a seeming sanction, in the opinion of some judges, is admitted. To class these extracts under the head of "Abridgment," would seem to be a perversion of terms. Whatever else

this part of Mr. Holcombe's book may be called, it is not an abridgment. With greater propriety it may be called a compilation, as the extracts contained in it are taken from various authors. As a compilation, this part of the book must be considered an infringement of the right of the plaintiffs, by the copious extracts made from the Commentaries, and the classification of the subjects copied from them. So far as citations are made in the Commentaries, Mr. Holcombe had a right to go to the original works, and copy from them; but he could not avail himself of the labor of Judge Story, by copying the extracts as compiled by him. This is a well established principle. Nor could he copy the plan or arrangement of the subjects in the Commentaries. It is said there can be no copyright in a plan, distinct from the work itself, any more than there can be a copyright in an idea. This is admitted: but the words in which an idea is expressed, is a subject of property; and so is the classification of the subject discussed.

Looking at the smallness of Mr. Holcombe's book, in comparison of that from which it was principally taken, one might suppose that the former was a short abridgment of the latter. But this comparison of size or number of pages, affords no guide to a proper decision. The character of the work must depend upon its matter: and it would seem from the considerations stated, that the first third part of Mr. Holcombe's book, including one hundred pages, can not be justly and legally called an abridgment, as it does not possess the essential ingredients of such a work; and that, viewing it as a compilation, it is an infringement of the plaintiffs' right, on the ground that the plan of the Commentaries is copied; and also for the reason that the extracts extend beyond the proper limit for such a work. The remaining two thirds of the book may be comprehended under a liberal construction of an abridgment. The matter is greatly condensed by Mr. Holcombe in his own language, and in a manner highly creditable to him.

The prayer of the bill as to the first hundred pages, is granted. I have been brought to this result reluctantly, being sensible that the motives of Mr. Holcombe were honorable, and that there was no intention on his part, unjustifiably, to appropriate the labors of Judge Story to his own advantage. In this view, I can not refrain from saying, that an adjustment of the controversy by the parties themselves, would be extremely gratifying to me; and, from my intimate knowledge of the eminent qualities of my lamented brother, and I will add, of his unbounded respect for talent and high character, that I can not be mistaken in saying, if he were living, an amicable adjustment would be most gratifying to him.