WEST PUB. CO. v. LAWYERS' CO-OPERATIVE PUB. CO.

(Circuit Court, N. D. New York. November 7, 1894.)

No. 6,106.

1. INFRINGEMENT OF COPYRIGHT—DIGEST OF LAW REPORTS.
   The compiler of a digest may prepare notes, abstracts, and paragraphs from opinions of the courts, and from syllabi prepared by the courts, and may digest such opinions and syllabi from printed copies published in a copyrighted system of reports; but he is not at liberty to copy the original work of the reporter in such reports, or to use that work in any way, directly or indirectly, in order to derive suggestions therefrom, or for the purpose of lightening his labors.

2. SAME.
   In such case he may use the copyrighted matter as a guide in the preparation of his work, in order to verify its accuracy, detect errors, omissions, or other faults, but in all other respects he must investigate for himself. He may take the original opinions, and prepare from them his own notes; but he cannot exclusively and evasively use the notes already collected and embodied by the skill, industry, and expenditures of another. Banks v. McDivitt, Fed. Cas. No. 961. 13 Blatchf. 163, followed.

3. SAME—SCOPE OF INJUNCTION.
   Where the pirated paragraphs of a digest can be separated from the paragraphs not subject to criticism, the injunction should be restricted to the infringing paragraphs. The doctrine of "confusion of goods," which has sometimes been invoked to suppress an entire publication, is not applicable where the infringing portions can be pointed out, and separately condemned.

4. SAME—PROOF OF PIRACY.
   A compiler digested, on an average, some 30 cases a day. Nine-tenths of these cases were digested from the reports of complainant. Held, that it could not be presumed that all the work of the compiler was piratical, where less than 1 per cent. of the whole output had been proved to be piratical.

5. SAME.
   In such case the mere fact that it might consume a decade to examine the paragraphs of the digest, and compare them with the syllabi of the reports, will not relieve the complainant from the burden of proving his case, and the injunction will be limited to the paragraphs which have been shown to be piratical.

6. SAME—MALA FIDES.
   Mala fides cannot be imputed to the defendant in such a case because, in making an annual digest, it used in part the reports which had been published by the complainant during the year. Callaghan v. Myers, 9 Sup. Ct. 177, 128 U. S. 617, distinguished.

This is an action in equity, upon final hearing, to restrain the infringement of 507 copyrights covering that number of pamphlets, published by the complainant, containing reports of decided causes in the state and federal courts. A motion for an injunction pendente lite having been made (53 Fed. 265) the question of infringe-

ment was referred to a master (W. S. Doolittle) who filed a report (May 22, 1893) finding infringement in 303 paragraphs. The master also filed the following opinion, which sufficiently states the facts in controversy:

"This is a reference to the master to hear and determine the issues raised on motion for injunction pendente lite in a copyright case and to report the portions of defendant's publication that infringe the copyright of complainant. There is practically no dispute on the facts alleged in regard to publication and copyright, the question of piracy being the real issue. The complainant, the West Publishing Company, assumes to report decisions of all the courts of last resort (and some of the intermediate courts) in this country in what is called the National Reporter System. The system is made up of various parts or reporters, the United States being divided territorially into convenient and appropriate districts for the purpose, about a dozen in number. Each reporter is published weekly in pamphlet form, and contains the current opinions of the courts of its respective district, preceded by headnotes and preliminary statements. These opinions are obtained by complainant from official sources at great expense, and with few exceptions are by far the earliest publication thereof. Ninety per cent. at least of the opinions published are published for the first time in complainant's system, and in some cases, as in this court, it is practically the only publication made. The original work of complainant in these weekly parts—that is, the headnotes and preliminary statements (excepting those prepared by the courts or foreign reporters)—and all other matter therein, except the opinions, are copyrighted. Taking the headnotes of these weekly parts as a basis, complainant constructs and publishes a digest in monthly parts, which monthly parts, with additions of selected cases and references to official reports, go to make up its Annual Digest—a single volume, called the 'American Annual Digest.' The volume for the year 1892 (with the monthly parts and reporters on which it is based) is the one in suit, the digest year being from September to September.

"The defendant, the Lawyers' Co-operative Publishing Company, publishes, among other publications, the General Digest of the United States, a work of the same purport as the American Annual Digest, and compiled in the main from parts which they publish semimonthly, the General Digest Annual for the year 1892 being the volume claimed by complainant to contain pirated matter in infringement of complainant's copyright. The defendant is a subscriber to the various reporters of complainant, and receives them in the usual weekly parts, and in these publications are found at least nine-tenths of the opinions used by them from which their digest paragraphs are claimed to be written. These weekly parts are distributed on their receipt among the defendant's several editors who from these pamphlets write the digest paragraphs which appear first in the semimonthly parts of the General Digest and thereafter in the Annual. From the testimony of the defendant it appears that its digest paragraph writer, when using the reporter, has before him in his work the syllabus and preliminary statement prepared by complainant, the same being directly followed by the opinion, and that without referring to the syllabus in any manner he constructs his digest paragraph from the opinion and that alone. Defendant's publication is principally the work of eight editors, who have each been sworn and given similar testimony to the effect that they had instructions never to consult the headnotes of other publications, unless the same were made by the court; that they never used in any way the headnotes of complainant's publication, and some of them that they never read the headnotes either before or after they had finished their work, even for comparison. One of the editors, however, Mr. Coffin, in his deposition stated that he invariably read the syllabi of complainant the first thing, but he made no use of them in his work; and Mr. Greenhoot that he sometimes did read them and sometimes not; but with two exceptions, where he could not find different expressions, he never made use of complainant's headnotes. Another, Mr. Hill, testified that after he had formulated his headnotes he sometimes compared his work with complainant's for curiosity merely. These editors, in reply to questions as

to the average amount of work they are capable of performing in a day in writing digest paragraphs from the opinions in complainant's publications, state variously, but it is between twenty and forty cases in a day's work; Mr. Greenhoot testifying 'that he averaged between eight and ten in an evening's work; Mr. Rich and Mr. Herrick that they averaged between thirty and forty in a day, and Mr. Haviland between twenty and thirty in a day. In reply to this line of testimony complainant produces as many editors of its own staff, who testify to the impossibility of. doing in a day the amount of original paragraph writing claimed by defendant's editors. Their testimony shows that from their experience the average is between four and seven cases a day, but that in preparing paragraphs from the headnotes of their own reporters for use in the digest they could then do between thirty and forty cases in a day. Mr. Appleton, one of complainant's principal editors, testifies that defendant's editor Greenhoot, who testified that his capacity was eight to ten cases in an evening's work, when employed by complainant in 1889 and for several years prior, was unable to do more than three cases in a day's work of eight hours. The only witness produced not in some way connected with the parties was Mr. Sickels, the New York court of appeals reporter, who was called by complainant. In a number of respects he substantiated the testimony of complainant's editors. He testified mainly from his own extensive experience as a reporter, stating that he considered himself a rapid worker; that he averaged in reporting but little more than four cases a day; that if a digester had before him and utilized the headnotes of other writers it might be possible to do as many as twenty to thirty cases in a day's work; otherwise, he did not deem it possible to average more than from four to six cases in a day.

"With these facts set forth complainant introduces and points out to the master some five hundred paragraphs taken from defendant's General Digest with the corresponding paragraphs from complainant's reporters and digests from which it is claimed defendant's paragraphs are pirated. These represent, of course, but a small portion of the complete work, which consists of some thirty-eight thousand digest paragraphs, and complainant insists that many more can be presented, but that it is unable to do so within the time limited, and the examples furnished are sufficient to show for the purposes of this motion. The master has examined with much labor and care all the opinions from which these headnotes have been taken and made comparison with headnotes of the same cases wherever they have since been made by official reporters. The identity between the paragraphs of most of the examples on first inspection is, indeed, remarkable. When taken in connection with the opinions, however, some are found to be simply direct quotations therefrom; some in which a portion are quotations from the opinion and the original work is entirely different, and some expressing in similar terms and phrases quite different ideas. Such cases where there is nothing else indicating piracy the master has first endeavored to eliminate. The cases in which errors have been copied, of which there are a number, are, as a rule, sufficient unto themselves as a proof of piracy. The cases in which clearly original language and construction are followed—not phrases and modes of expression common to every digester, but such original language or construction that it does not seem that two reporters separately digesting the same opinion, could possibly use with such marked similarity—these there has been no hesitancy in reporting. In a number of cases it seems as though defendant's digester, after reading the headnote of the reporter, had gone through the opinion to see if the wording of the headnote was to be found therein. If it were found there, even in disconnected phrases, he used it also, making use of the original labor of selection and arrangement. If the language were not there in haec verba, he employed synonyms, and, if necessary, resorted to rearrangement and transposition. In many instances reported the paragraphs are practically verbatim copies, and it seems as though rearrangement has been resorted to to make the paragraphs comply with the different theories on which the two digests are based, complainant using the concrete method, endeavoring to express the actual point decided with reference to the actual facts, so as to distinguish a case from others, while defendant uses the abstract method, giving the principle of law decided and endeavoring to make it general.

That this case is an anomaly in copyright litigation is in some respects true, but the contention that consequently the case of Myers v. Callaghan in no wise furnishes a predecedent for its determination can hardly be sustained. In some respects the cases are analogous, and, in so far as they are, a precedent is certainly furnished. In both cases complainant's publications are used by defendant in editing or digesting; in both defendant's editors state their work to be independent; in both, in the majority of cases, there is the appearance of independent labor without regard to complainant's work, yet in both it is apparent that complainant's work has been used, and, in some instances, words and sentences copied without change; in others changed in form only. Judge Drummond, in his opinion (5 Fed. 726), afterwards concurred in by the supreme court (9 Sup. Ct. 177), says: 'The conclusion is irresistible that, for a large portion of the work performed in behalf of the defendants, the editors did not resort to original sources of information, but obtained that information from the volumes of Mr. Freeman (the complainant). Undoubtedly it was competent for an editor to take the opinions of the supreme court, and possibly from the volumes of Mr. Freeman, and make an independent work; but it is always attended with great risk for a person to sit down, and with the copyright of a volume of law reports before him, undertake to make an independent report of a case. It is not difficult to do this, going to the original sources of information—to the decisions of the court, the briefs of counsel, the records on file in the clerk's office—without regard to the regular volumes of reports. Any one who has tried it can easily understand the difference between the headnotes of two persons, equally good lawyers, and equally critical in the examination of an opinion, where they are made up independent of each other; and, bearing in mind this fact, it seems to be beyond controversy that, although in many, and perhaps most, instances there is a very considerable difference between the headnotes of the defendant's volumes and those of the plaintiff, the latter have been used in the preparation of those of the former.'

"The simple question for the master is, are these digest paragraphs presented the work of independent labor or not? There is little doubt but that in almost every instance defendant's digester read the opinion, and there is no testimony to the contrary, and it may be that defendant's digesters are more rapid workers than complainant's, or that one may construct more original digest paragraphs than syllabi in a given time; but that many of complainant's paragraphs have been more or less utilized by some of defendant's digesters cannot be gainsaid. Neither can it be said that both parties have gone to the same sources of information in the same sense that the expression is generally used. No fair-minded person can compare the headnotes in pamphlet No. 12, of volume 29, Pacific Reporter (and there are other like cases), with the digest paragraphs made by defendant's editor from the opinions in this number, and published in the General Digest, and doubt for a moment piracy, and particularly when the digester had before him headnotes already prepared, even when his testimony goes to show that no use has been made of the headnotes. It is claimed by defendant that its work is the result of independent labor, and that the resemblances are simply innocent coincidences. In some of the examples, perhaps, this is so; in others, certainly, it is not; and the master's report sets out in detail such cases that seem to be from themselves, in connection with the various opinions, clearly cases of piracy. In some cases where doubt has arisen as to the possibility of the work having been performed without reference to complainant's headnotes, this being a preliminary and not a final hearing, defendant has been given the benefit of the doubt. It is the duty of the master to report the facts and to identify such of the paragraphs presented to him as appear to have infringed the copyright. It does not seem to be within the province of the master to go further than this, though the briefs suggest it, and it seems that the report presented herewith fulfills all the requirements."

Rowland Cox, for complainant.
William F. Cogswell, for defendant.

COXE, District Judge. It must be regarded as settled law in the United States that an author has no exclusive property in a published work except under some act of congress, and then only when he complies with the provisions of the act. Wheaton v. Peters, 8 Pet. 593; Banks v. Manchester, 23 Fed. 143, affirmed 128 U. S. 244, 252, 9 Sup. Ct. 36. A reporter can have no copyright in the opinions delivered by the court or in the syllabi prepared by the judges. Wheaton v. Peters and Banks v. Manchester, supra; Banks v. Publishing Co., 27 Fed. 50; Nash v. Lathrop, 142 Mass. 29, 6 N. E. 559. A reporter may acquire a valid copyright for the headnotes, footnotes, tables of cases, indexes, statements of fact and abstracts of the arguments of counsel, where these are prepared by him and are the result of his labor and research. So he may have a copyright for a digest or synopsis of judicial decisions and the selection and arrangement of cases relating to a particular branch of the law. The copyright protects only the original work of the reporter. Myers v. Callaghan, 5 Fed. 726, 10 Biss. 139; Id., 20 Fed. 441, affirmed 128 U. S. 617, 9 Sup. Ct. 177; Connecticut v. Gould, 34 Fed. 319; Gray v. Russell, 1 Story, 11, Fed. Cas. No. 5,728; Davidson v. Wheelock, 27 Fed. 61; Drone, Copyr. 159, 160. The compiler of a digest has no monopoly of the opinions, decisions and syllabi prepared by the courts and judges, even though he has previously published them in copyrighted pamphlets. These opinions, decisions and syllabi are free alike to all digesters. But when notes suitable for use in a digest have been prepared from these common sources of information and properly secured by copyrights a subsequent compiler in the same field is not permitted to avail himself of this original work, and save time and labor for himself by copying from the property of others. He may use the copyrighted matter as a guide in the preparation of his own work to verify its accuracy, or detect errors, omissions or other faults, but in all other respects he must investigate for himself. He may take the original opinions and prepare from them his own notes, "but he cannot exclusively and evasively use those already collected and embodied by the skill and industry and expenditures of another." Banks v. McDivitt, 13 Blatchf. 163, Fed. Cas. No. 961, and cases cited; Gray v. Russell, supra; Drone, Copyr. p. 394.

Where the pirated portions can be separated from the portions not subject to criticism the injunction should go not against the entire work, but against the infringing portions. The doctrine of "confusion of goods" which has sometimes been invoked to suppress an entire publication is not applicable where the infringing portions can be pointed out and separately condemned. Banks v. McDivitt, supra; Lawrence v. Dana, 4 Cliff. 1, 84, 85, Fed. Cas. No. 8,136; Mawman v. Tegg, 2 Russ. 385; Greene v. Bishop, 1 Cliff. 186, 203, Fed. Cas. No. 5,763; Little v. Gould, 2 Blatchf. 165, 186, Fed. Cas. No. 8,394; Story v. Holcombe, 4 McLean, 306, Fed. Cas. No. 13,497; Publishing Co. v. Keller, 30 Fed. 772; Farmer v. Elstner, 33 Fed. 494; Drone, Copyr. pp. 527, 530.

Apply these principles to the case at bar. The complainant has

valid copyrights for the original work prepared by its editors and published in the various pamphlets composing its system of reports. The opinions of the judges and the syllabi prepared by them are not covered by the complainant's copyrights, and these the defendant, considering the matter from a purely legal point of view, had a perfect right to use. The defendant had a right to copy the opinions, decisions and syllabi prepared by the court from the complainant's publications, or from any other source, and use them precisely as other matter which is free to the public. The defendant could lawfully prepare notes, abstracts and paragraphs from these free sources of information, collect them and publish them in a digest of its own. In doing this its editors had no right to avail themselves of the complainant's original work. They were forbidden not only from copying the work of the complainant's editors, but also from using that work in any way to give them suggestions or to lighten their labors. In short, they were not at liberty to appropriate directly or indirectly the matter which the complainant has protected by copyrights.

The master to whom the question of infringement was referred has, with great diligence, compared the suspected paragraphs pointed out by the complainant with the alleged corresponding paragraphs in the copyrighted works, and has reported 303 instances of piracy. The court has examined the master's report sufficiently to be convinced that it is a conservative report, and, without reviewing his work in detail, accepts it as establishing the fact that the above number of paragraphs infringe. As the defendant's digest contains about 38,000 paragraphs the infringement thus established is considerably less than 1 per cent. At the trial, for the first time, complainant presented some 700 additional paragraphs which it asserted to be infringements. Assuming as to these that the same proportion of pirated paragraphs should be established as in those submitted to the master, still the infringing matter would amount to less than 3 per cent. In this connection it should be remembered that the complainant has had the defendant's book in its possession for two years. As the result of two years' examination, assuming that the court should find with the complainant upon every one of the paragraphs pointed out by it as infringing its copyrights, the total pirated matter would amount to less than 4 per cent. It must, of course, be conceded that a large part of the defendant's book, having been compiled from other publications and from syllabi prepared by the courts, is not covered by the complainant's copyrights.

The situation then is this: Matter proved to be piratical, about five-eighths of 1 per cent. Other designated matter, alleged to be piratical, between 1 and 2 per cent. Matter not affected by the complainant's copyrights, about 28 per cent. Regarding the remaining portions of the work,—about 70 per cent.,—no direct proof is offered. The defendant contends that this 70 per cent. must be presumed to be innocent until proved to be guilty. The complainant, on the contrary, insists that it must be presumed fraudulent from the

proof already adduced. The complainant argues that the defendant's editors had the copyrighted books before them when they prepared their digest paragraphs; that they are shown to have done five times more work than other editors engaged in like occupation; that they are proved to have pirated 303 paragraphs and the presumption is that the entire book is so tainted with fraud that it should be suppressed. The court is of the opinion that in a work like a digest, which has the general characteristics of a directory, an index or a road book, where each paragraph is separate and distinct from every other, and can be removed without in any way destroying the effect of the remaining paragraphs, it would be establishing a most dangerous precedent to condemn the entire work when less than 1 per cent. is proved to be piratical. This would be substituting conjecture for proof, and in a case, too, where the proof is accessible. Where infringement exists in copyright cases it is usually susceptible of proof. There are always some indications which disclose the presence of the pirate. The court does not understand that this is denied, but it is said that it will consume a decade to examine and compare all the remaining paragraphs and that the complainant should not be required to enter upon such a task. Bluntly stated the proposition is this: A party, upon whom the onus probandi rests, is entitled to a decree for the entire relief demanded if, instead of proving his case, he proves a part and convinces the court that it will be difficult to prove the rest. Were this the case of an ordinary book like a history or a novel, and the court were convinced that, though disguised, the plot and plan of the work had been appropriated and the characters reproduced, though under different names, there would be no hesitation in condemning the entire work. Here, on the other hand, there is no connection whatever between the pirated paragraphs and the paragraphs which are the result of original and honest labor. The former can be removed and the complainant's rights protected, and without depriving the defendant of the fruits of the work which is fairly its own. It is not a case where the doctrine of "confusion of goods" is applicable, because the complainant's goods can be separated from the defendant's; it will take time, but it can be done. If the complainant is given the sweeping decree asked for the defendant will be prevented from publishing even the 28 per cent. of matter to which the complainant does not pretend to lay claim. If the defendant should eliminate from its work every paragraph which the complainant has pointed out as infringing, the remaining 36,000 paragraphs could not be sold by the defendant. Indeed, should the defendant issue a new edition with every paragraph eliminated which has been designated as open to the slightest suspicion of piracy it would still be under the ban of such a decree. The court cannot believe that such a decree would be just. Though the defendant, through some of its editors, has been guilty of inequitable conduct in appropriating to its use the result of the complainant's labors, the punishment it should receive should not be out of all proportion to the offense. To charge the defend-

ant with 38,000 piracies because it is shown to be guilty of 303 is pushing the law of presumptive evidence far in advance of any reported case. Equity seems to demand that the defendant be permitted to use what is honestly its own and restrained from using what it has taken from the complainant. By such a decree the rights of all will be preserved.

The learned counsel for the complainant argues the cause as if the defendant was, in effect, reproducing the copyrighted pamphlets of the complainant and was endeavoring to supersede and supplant these publications. It is thought that such is not the case. The defendant does not publish reports, except of selected cases, and the bill does not charge that these infringe the complainant's copyrights. The book with which the defendant's digest actually competes is the complainant's digest. The defendant's digest in no way supplants the copyrighted reports. Indeed, by advertising them extensively, it would seem that it must assist in extending their sale. It appears to the court that this is an important distinction which should not be lost sight of. It is not a case where, as in Callaghan and Myers, the defendant's books were published in order that they might be substituted for the complainant's books; where the paging, order of cases, statements of facts, etc., were intended to be similar. In short, it is not a case where in every volume there are unmistakable indicia that the defendant worked from the copyrighted portions of the complainant's volume and intended to produce an almost identical book. In a case like Callaghan and Myers the fact that the infringer worked from the copyrighted books is, of course, a most important factor, but in the case of an index or a digest the compiler is not guilty of bad faith in using the book that he is digesting. He must use this book. Not only should a digest tell, in brief, what has been decided, but it should also inform the reader where the decision is to be found in full. This of necessity requires an examination of the reports. To prepare a digest without such an examination would be an impossibility. A digest prepared only from the manuscripts of the judges would be a ludicrous excrescence which would not be harbored in any library. It would be about as valuable as a city directory which contains the names of the citizens, but omits to mention where they reside. As the complainant, by reason of its large facilities, is able, as a rule, to place the decisions of the courts before the profession in advance of other publishers, it is obvious that any one who makes a true and useful digest of "the year's grist" must examine the complainant's publications. If the complainant's contention is correct, that a digester may not take a "copyrighted book in his hands," the making of digests is at an end. The court is unable to perceive how mala fides can be imputed to the defendant because, in making an annual digest, it uses the reports which have been published during the year.

Without pursuing the subject further it is thought that the complainant must be contented when it has maintained and vindicated its privileges under the law of copyright; that the defendant should be punished to the extent that it has been guilty of an infrac-

tion of that law, and held accountable for every infringement which can be fairly laid at its door. Beyond this the court cannot go; it cannot consider matters not embraced in the issues joined by the pleadings, or enter upon a course of speculation and presume wholesale piracy from the proof now before the court, or from the alleged unfair business methods of the defendant in its relations with the complainant. The court can discover nothing in the case of Callaghan v. Myers, which is at variance with these views.

As the complainant stated at the argument that it did not require the court to make any comparison of the additional paragraphs, before referred to, with complainant's publications, or any finding in relation thereto, it follows that the complainant is entitled to a decree for an injunction and an accounting, limited, however, to the paragraphs reported by the master, with costs.