### FALK v. DONALDSON et al.

#### (Circuit Court, S. D. New York. July 3, 1893.)

1. COPYRIGHT—PROCEEDINGS TO OBTAIN — PHOTOGRAPHS—DEPOSIT OF COPIES.
   In obtaining a copyright for a photograph, it is not necessary that the two copies required to be deposited with the librarian of congress should be mailed after publication.

2. SAME—SUBJECT OF COPYRIGHT.
   A photographist, who, by posing, and by the arrangement of lights, shades, and various accessories, produces an artistic photograph of an actress, representing his ideal of a character which she is accustomed to impersonate on the stage, is entitled to the protection of the copyright law.

3. SAME—INFRINGEMENT.
   A lithograph, which, to the eye of the ordinary observer, reproduces the material parts of a copyrighted photograph, is an infringement, although it is not an exact copy, and lacks the artistic excellence of the photograph.

In Equity. Suit by Benjamin J. Falk against Robert M. Donaldson, Charles K. Mills, and George W. Donaldson for infringement of a copyright. Decree for complainant.

Isaac N. Falk, for complainant.
Wetmore & Jenner, for defendants.

TOWNSEND, District Judge. This is a bill in equity for an injunction and accounting by reason of an alleged infringement of complainant's copyright in a photograph of the actress Julia Marlowe.

The claim that complainant neglected to comply with the statutory requirements is disproved by the evidence. It appears that on January 6, 1888, complainant caused to be sent to the librarian of congress the printed title, and on February 22d, and within 10 days of publication, he caused two finished copies to be sent to the librarian of congress. Both of these acts were duly certified to by the librarian of congress. It is not necessary that the copies should be mailed after publication; if mailed before, they are mailed within 10 days of publication. Chapman v. Ferry, 18 Fed. Rep. 541; Belford v. Scribner, 144 U. S. 505, 12 Sup. Ct. Rep. 734.

The defendants deny that the photograph represents any original, intellectual conceptions of the complainant.

The complainant is a photographist. On December 27, 1887,

Miss Marlowe came to his studio, bringing several different cos-
tumes; and the complainant took photographs of her in some 20
or 30 different positions, representing different characters assumed
by her on the stage. Among them was the photograph in suit,
which represented the actress in the character of Parthenia, in
the play of "Ingomar, the Barbarian." Complainant testified as
follows:

"I tried to produce an ideal portrait of the Greek maiden of the play, and
considered that the main sentiment embodied in the character is a combina-
tion of simplicity, innocence, and courage. * * * I posed Miss Marlowe as
shown in the photograph itself, arranged the illumination and the back-
ground, as shown in the picture itself, and secured the expression therein
shown, and, outside of that, did the mechanical work of attending to the
camera, focusing, and exposing the image."

Complainant further explained, at length, the methods employed
by him in such cases, to make the subject so forget his surround-
ings as to mentally assume the part or character to be repre-
sented in the picture; and the arrangement of curtains, screens,
and headlights, so as to bring out expression and character.

The defendants claim that a photographist is a mere mechanic,
and that it is absurd to suppose that complainant could have sug-
gested to a trained actress like Miss Marlowe either costume, facial
expression, or pose. A gas man at the Bijou Theater testified that
he had seen her there in the exact pose represented in the photo-
graph. The costume was the one ordinarily worn by the actress
when playing this part. The mode of dressing the hair merely
followed the fashion of the day. In another photograph, taken
during the year in which complainant's photograph was taken,
Miss Marlowe wore the same gown, and assumed a position some-
what similar to that shown in complainant's photograph, except
that the arms were not raised. But I am unable to assent to the
claims of defendants, for the following reasons: An examination
of the photograph shows that it is the work of an artist. The ques-
tion is whether the artist was Miss Marlowe, or complainant. How
far the artistic contributions are to be attributed to the talent of
Miss Marlowe, it is impossible to say. The testimony of complain-
ant as to his share in producing the result is not denied. He was
an artist before he became a photographist. He had had a large
experience in taking photographs, and on this occasion he appears
to have availed himself thereof, and by the use of lights and shad-
ows, and various devices, to have produced a most satisfactory re-
sult.

There is another circumstance which points to this particular
pose as the work of complainant. It will be noticed that the posi-
tion assumed by Miss Marlowe is a side view. It is one where the
direction of the head and eyes is such that she could not have
judged, by herself, how far to turn the body, and raise the hands,
or how to incline the head, so that the lights and shadows might
best reveal the beauties of face and figure. It is only necessary to
examine the bundle of 15 photographs introduced by defendants

to show that the pose of complainant's photograph was common among actresses, in order to see how strikingly poses, mechanically alike, may artistically differ.

I do not find in defendant's exhibit of a photograph of Miss Marlowe anything which refutes complainant's claim of originality in his photograph. Each is the side view of the same woman, in the same gown. But in one, a pretty woman is standing for her picture; in the other, she has lost her personality in the character she has assumed, as interpreted in the pose chosen by the complainant. It seems to me only necessary to compare the two photographs in order to detect those differences which, not to be expressed in words, yet, taken together, serve to show that the one is in no sense a counterpart of the other.

It does not seem any more absurd that Falk should have posed Miss Marlowe than that Sarony should have posed Oscar Wilde. The notoriety of the latter depended largely upon the costumes designed, and poses assumed, by him. But under the finding of facts in Lithographic Co. v. Sarony, 111 U. S. 60, 4 Sup. Ct. Rep. 279, the court held the Wilde photograph to be an original work of art, the product of plaintiff's intellectual invention, and entitled to protection under the copyright act. A comparison of the two cases shows that what Sarony did, complainant did. In the Sarony Case it was not found that the photographist originated the costume or the character. It was, as I recollect it, a photograph of a character in one of the Gilbert & Sullivan operas. But the photograph was Sarony's mental conception of the character, produced, as in this case, by the use of lights and shades, and various accessories. On these grounds, and because a useful, new, harmonious, characteristic, picture was the result, the court held plaintiff to be the author thereof. The court, in the Sarony Case, referring to the decision in Nottage v. Jackson, 11 Q. B. Div. 627, says:

"Lord Justice Cotton said: 'In my opinion, "author" involves originating, making, producing, as the inventive or master mind, the thing which is to be protected, whether it be a drawing or a painting or a photograph.' And Lord Justice Bowen says that photography is to be treated, for the purposes of the act, as an art, and the author is the man who really represents, creates, or gives effect to the idea, fancy, or imagination. * * * These views of the nature of authorship, and of originality, intellectual creation, and right to protection, confirm what we have already said."

And in Falk v. Engraving Co., 48 Fed. Rep. 264, recently affirmed by the United States circuit court of appeals in this circuit, the court, upon facts substantially the same as in this case, sustained the copyright. 54 Fed. Rep. 890.

In the light of these decisions, it seems to me established that in the present case the complainant was the author of an original work of art, the product of his intellectual invention.

Defendants deny that they have copied complainant's photograph, or any part thereof. There is a sharp conflict of testimony as to whether Mills, one of the defendants, admitted that their lithograph was a copy of complainant's photograph, and attempted

to settle with complainant for infringement. If it were necessary to decide this question, I should consider, in view of the general character of the testimony of Mills, and the contradictions therein, that the admission was sufficiently proved. But the real question is not one as to admission of fact, but whether the lithograph is an illegal appropriation of the substantial parts of the photograph. In such a case the inquiry always is whether the alleged infringer has appropriated the results of the original conception of the artist. It is not a question of quantity, but of quality and value; not whether the part appropriated is a literal copy of the original production, but whether it is a substantial and material part. The question is, to what is the artist or author entitled as his conception, and what of such original conception has been appropriated? Gray v. Russell, 1 Story, 11; Folsom v. Marsh, 2 Story, 115; Drone, Copyr. 410. The forcible argument of counsel for defendants upon this point proceeds upon the theory that the idea or conception of the original artist may be followed and used by another, provided he clothes such idea or conception in different language or form. He claims that the lithographer had a perfect right to use the photograph for study, suggestion, and even as a model, in developing his own ideas, and that, as he had merely taken the conceptions of the other, and clothed them in his own form and expression, his work was original. Copying, he says, involves, not only taking another's ideas or conceptions, but also their expression.

The question presented here is whether the defendants have so far copied the design of complainant as to appropriate his manifestation of his conception, or a substantial part thereof. The lithograph is not strictly a copy of the photograph. It differs from it in various ways. Some 40 differences have been suggested by experts introduced by defendants. Expert testimony in such a case has no greater weight than expert testimony upon the question of infringement. "The test of sameness is determined by the eye of the ordinary observer." Gorham Co. v. White, 14 Wall. 528; Ripley v. Glass Co., 49 Fed. Rep. 927. But the testimony is helpful in suggesting and locating the differences, and it enables us to discover their general character; and it seems to me that, taken together, they show mere differences of detail. The lithograph lacks the artistic excellencies of the photograph, but I cannot understand how the fact that an attempted appropriation has been inartistically accomplished can help the infringer. If a painter originates and copyrights a work of art, can a chromo manufacturer copy the design, to advertise the wares of a merchant, and defend against an action on the ground that the mechanic has not caught the spirit of the artist, or mixed the pigments in the same tones of color? Is the sculptor compelled to see his life work in marble appropriated, and modeled in soap or sugar, because, forsooth, the "dimples are lacking" from the imitation, or "the one is three or four times larger than the other?" And yet these are among the reasons assigned by the experts for the

defendants why there is no similarity between the photograph and lithograph.

In the determination of the question as to the nature and extent of the similarity which must be shown between the original and the alleged copy, in order to constitute infringement, we are guided by several recent decisions. Judge Coxe, in Untermeyer v. Freund, 37 Fed. Rep. 343,—a design patent case,—says:

"The policy which protects a design is akin to that which protects the work of an artist, a sculptor, or a photographist, by copyright. It requires but little invention * * * to paint a pleasing picture, and yet the picture is protected, because it exhibits the personal characteristics of the artist, and because it is his. So with a design. If it presents a different impression upon the eye from anything which precedes it; if it proves to be pleasing, attractive, and popular, and does not show a wide departure from other designs,—its use will be protected."

And, in the recent case of this complainant v. Lithographing Co., 48 Fed. Rep. 678, where Judge Wheeler sustained the copyright of a photograph of a woman and child, he said:

"The defendants * * * have used plaintiff's production as a guide for making others, and have thereby substantially copied it as he produced it, and infringed upon his exclusive right of copying it."

In Turner v. Robinson, 10 Ir. Ch. 121, 510, the defendant was charged with piracy, in having copied a painting representing the death of Chatterton. He denied direct copying, but admitted having seen the original while on exhibition, and claimed that he had made his photographs from an arrangement of figures, objects, and scenery, which he had prepared in his own gallery. The court said:

"The stereoscopic slides are not photographs taken directly from the picture in the ordinary mode of copying; but they are photographic pictures of a model itself copied from, and accurately imitating, in its design and outline, the petitioner's painting. It is through this medium that the photograph has been made a perfect representation of the painting. Thus the object contrived and achieved, and the consequent injury, are the very same as if the copy had, in breach of confidence, been made on the view, and by the eye; and no court of justice can admit that an act illegal in itself can be justified by a novel or circuitous mode of effecting it. If it is illegal, so must the contrivance be, by means of which it was effected." Drone. Copyr. 108.

Bearing in mind the general rule as thus interpreted, let us compare the photograph with the lithograph. Imperfect and comparatively lifeless as the lithograph is, yet it needs no expert to show that, although varying somewhat in design, it is a copy of the conception of complainant. The angle of the head, the clasping of the arms, the interlaced fingers, and the general expression and pose, irresistibly suggest and recall the photograph. Defendants claim that the value of the photograph has not been impaired by the publication of the lithograph, and there is no infringement, because the photograph and lithograph are not rivals, and are not in competition in any way. This fact does not affect the question of infringement, but only the measure of damages. Falk v. Howell, 37 Fed. Rep. 202. The measure of complainant's rights is not limited by the mere fact that the lithograph would not dis-

place the photograph in the market. He is entitled to any lawful use of his property, whereby he may get a profit out of it. It is not a question of the extent of damages, but of violation of rights. I have not overlooked the suggestions of counsel for the defendants that the application of the copyright law to cases like the present may lead to abuse, and be productive of injustice. But this court must administer the law as it finds it. Under the rule established in the Sarony Case, the complainant must be held to be the author of the conceptions expressed in the photograph. The defendants have appropriated a substantial portion of such conceptions.

Let there be a decree for an injunction and an accounting.