## ROE–LAWTON v. HAL E. ROACH STUDIOS et al.

(District Court, S. D. California, S. D. March 7, 1927.)

1. **Words and phrases—"Theme" is the underlying thought which impresses reader of a literary production.**

In its ordinary meaning, a "theme" is understood to be the underlying thought which impresses the reader of a literary production, or the text of a discourse.

2. **Copyrights ⬥4—It is only original treatment of a theme which may be protected by copyright.**

It is the theme presented in an original way, with novelty of treatment or embellishment, which becomes the property of an author, in the exclusive use of which a copyright will protect him.

3. **Copyrights ⬥55—To constitute "infringement of copyright," it must definitely appear that the work of the author has been made use of.**

To constitute "infringement of copyright," there must be appropriation of substantial portions of the copyright matter, so that it definitely appears that the work of the author is made use of.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

4. **Copyrights ⬥55—Copyright of stories relating to wild horses held not infringed by motion pictures with same theme, but not making use of characters or incidents.**

Copyright of a series of stories, the underlying theme of which was wild horses, their character and habits, and the power of man to subdue them and to gain their affection, all of which was a matter of more or less general knowledge, *held* not infringed by motion pictures having the same theme, but not making use of the characters or incidents of the stories, or others closely resembling them.

5. **Copyrights ⬥55—Test of infringement of copyright of literary work by motion pictures is whether ordinary public would see a connection.**

Unless the public, using the standard of the ordinary observer, is led to believe that motion

picture films are a picturization of a copyrighted literary work, no infringment is shown.

In Equity. Suit by Vingie E. Roe-Lawton against the Hal E. Roach Studios and others. Decree for defendants.

Scarborough & Bowen, of Los Angeles, Cal., for plaintiff.

Charles C. Montgomery and Benjamin W. Shipman, both of Los Angeles, Cal., for defendants.

JAMES, District Judge. Plaintiff by this suit seeks to recover damages and to have equitable relief against the defendants, who are motion-picture producers. Infringement of copyright covering literary material embodied in a series of five stories, published in a weekly journal of national character in October, 1915, February, 1916, October, 1916, June, 1917, and February, 1918, is claimed. They were stories in which the wild horse supplied the motive; the underlying theme being the power of the human to subdue and win the affection of the animal.

The defendant, Roach Studios, in 1924 and 1925 made and distributed two motion pictures, in which the dramatic interest was centered upon a wild horse, and in which the underlying theme had little difference from that which the plaintiff used in her several stories.

[1] It is intimated in some decisions that the appropriation of a theme violates an author's copyright. In its ordinary meaning, a theme is understood to be the underlying thought which impresses the reader of a literary production, or the text of a discourse. Using the word "theme" in such a sense will draw within the circle of its meaning age-old plots, the property of every one, and not possible of legal appropriation by an individual. [2, 3] It is the theme presented in an original way—with novelty of treatment or embellishment—which becomes the property of an author, in the exclusive use of which a copyright will protect him. Dymow v. Bolton et al. (C. C. A. 2d) 11 F.(2d) 690; Stephens et al. v. Howells Sales Co. (D. C. N. Y.) 16 F.(2d) 805. All of the cases to the point hold that there must be appropriation of substantial portions of the copyright matter, so that it may definitely appear that the work of the author is made use of.

[4] It was shown in evidence that the existence of bands of wild horses within rugged and unoccupied sections of the western portion of the United States had been well known long before they were used to form the basis for the stories written by the plaintiff. It

was established with equal certainty that one outstanding male would, by the force of his physical strength, often assume the place of leader of the band, and be usually observed on guard, stationed at some elevated and prominent spot, ready to give warning and lead his troop away at the approach of danger. This habit, naturalists have learned, is to be observed in a wide range of animal life, from the elephant in its herd to the wild goose in its flock. That the horse, however wild and untamed, can be overcome by man and reduced to a state of subjection, is a matter also of common knowledge, to be noticed without proof. As familiarly known, also, is the fact that such an animal may acquire great affection for the man who conquers it.

Plaintiff, adopting what was common knowledge respecting the wild horse and man's power over it, built her stories with a framework of fact, weaving in, for incidental and attractive interest, romances between men and girls. She wrote with a musical pen, and with much apparent familiarity with her subject, constructing pleasing stories of literary merit.

The two pictures of the defendant Roach Studios featured the wild horse, and especially a magnificent specimen, who was the leader of the band, and carried out the common theme of the power of man over the animal. There was the incidental love story accompanying each. However, comparing the picture stories, as told by the films and their explanatory legends, with the written stories of the plaintiff, I have been unable to conclude that there is substantial identity of scenes, incidents depicted, or treatment of theme in whole or in substantial part.

If it could be said in this case that the Roach Studios, using the underlying theme of plaintiff's stories, had adapted characters and incidents closely resembling those used by the plaintiff in the exposition thereof, infringement would be shown. There are a few incidents in the films which are quite strikingly similar to those which the stories describe, but they all belong to the character of natural and expected happenings, considering the normal action of animals and persons placed as the characters are in the environment which we find them. It is not a test of infringement that) such similarities exist. Bachman v. Belasco (C. C. A.) 224 F. 817. It might be of interest to re-present the similarities here, but it would extend the discussion to a greater length than seems required for the purposes of this decision. Counsel have adequately and correctly set forth that

comparison in their briefs, paralleling the features of likeness between stories and films. [5] Unless the public is deceived by the pictures, and led to believe that the films are a picturization of plaintiff's literary work (the standard of the ordinary observer being applied) then no infringement is shown. Having read with much care the stories written by plaintiff, and having witnessed an exhibition of the film pictures, I am not of the opinion that the latter do more than show to the viewer that the common and open field used by plaintiff has been selected by the picture producers within which to build their stories.

Decree is ordered for defendants. All legal exception is allowed plaintiff to the making of this order and to the entry of the decree to follow.