### R. L. POLK & CO. v. MUSSER et al.

### Civ. No. 10808.

United States District Court, E. D. Pennsylvania.

Jan. 11, 1952.

Newberg, Grubb & Junkin, Paul I. Guest, Philadelphia, Pa., Everett H. Wells, Detroit, Mich., for plaintiff.

Zachary T. Wobensmith, 2nd, Philadelphia, Pa., for defendants.

KIRKPATRICK, Chief Judge.

I am of the opinion that the plaintiff has missed, by a narrow margin, proving what the law requires in order to establish copyright infringement in a case of this kind—namely, that the defendants made use, by copying, of a substantial part of the plaintiff's directory.

The plaintiff published a directory of the City of Lebanon and vicinity for 1948; and the defendants, one for 1949. The evidence establishes that, among the names of over 47,000 persons and streets appearing in the defendants' directory, 14 items (10 persons and 4 streets) were fictitious, having been inserted by the plaintiff in its book for the purpose of

detecting infringement.[1] In the absence of any evidence showing how these names came to be included in the defendants' book, the only inference which can be drawn is that they were copied from the plaintiff's book by somebody in the defendants' employ.

In a number of cases courts have drawn, from the inclusion of trap items in the accused work, the further inference of widespread and substantial copying, but the question is always one for the trier of fact in each case and must be determined from all the evidence. If the rest of the evidence clearly negatives the inference of any substantial amount of copying throughout the book, the inclusion of a few trap listings, standing alone, will not, of itself, compel a finding of infringement.

It is not contradicted that the defendants in getting out their book employed 18 enumerators who made a house-to-house canvas and who turned in 46,896 names of persons, for which the defendants paid them $845.60, part of a total cost of $1,145.60 for the enumeration of all names. Of the remaining names (not over 450) which were added to the defendants' book after the enumerators had done their work, there were probably some which were copied from the plaintiff's book. Most of the names so added were instances in which the enumerators' slips were found to be incomplete, as for example, where one of them had visited a house on her list but found no one at home and had turned in the slip with the house number but no information as to who lived there. Miss Jones, the defendants' supervisor, testified that in such cases she used the plaintiff's directory to see if any one lived there and that, if residents of the house in question were listed, she went to the house herself and got the information first-hand. Again, if there was a noticeable omission, in the slips, of several street numbers in succession, she looked at the plaintiff's book to see if there were houses there and, if there were, she visited them personally. She said that she followed these procedures with "most" of the houses. I accept her testimony that she did it in the majority of cases, but I think that her reservation together with some internal evidence warrants a finding that she did not do it in all, but that in some cases she merely copied the listing from the plaintiff's book.

However, say that one-half of the items listed by others than the enumerators (Miss Jones or, possibly, Mr. Musser) were copied, which I think is a very liberal allowance, the result is that no more than 225 names out of over 47,000, or a little less than one-half of 1% of the names in the defendants' book, were copied. The balance unquestionably represents original work. That conclusion rests not solely upon the testimony of the defendants' witnesses but is also supported by the strongest kind of internal evidence arising from a page by page spot comparison of the two books—the many differences between them in arrangement, in addresses, names of members of the family and descriptions of occupations. There certainly was nothing remotely resembling wholesale appropriation of the plaintiff's work and I think that what copying was done falls short of being substantial, as that term applies to copyright infringement.

Findings and Conclusions.

The requests for findings of fact are answered as follows:

(A) Affirmed—Plaintiff's Nos. 1, 2, 4, and 9; Defendants' Nos. 1, 2, 3, 4, 5, 6, 8, 10, 11, 15, 16, 17, 20, 21, 23, 24, 25, and 26.

(B) Denied—Plaintiff's No. 6.

(C) Qualified—Plaintiff's 3rd request is affirmed except for the last clause beginning "which infringes". No. 5, to read as follows: "The defendants have not pro-

---

1. As a matter of fact, a total number of 24 trap listings appeared in the defendants' book. The difference was due to the fact that both books listed the names of persons twice, once alphabetically and once geographically by street and number; and so if we are to consider the listings (as distinguished from names) as the basis for comparison, we would have to more than double the 47,000 names in the defendants' book, in order to get the proper result.

duced any evidence to explain the occurrence of these trap listings in their book." No. 7 is affirmed with the qualification that the evidence shows only that certain of the defendants' employees had access to the copyrighted book, not that they owned it or had it in their possession. No. 8 cannot be affirmed. The defendants produced no evidence to explain the occurrence of the trap names in their directory. They did, however, suggest, by way of explanation, the possibility that the plaintiff itself could have obtained the insertion of the names through the connivance of one of the enumerators. The Court has found that the copying was not confined to the trap names and that the exact extent of it cannot be determined, but the Court has also found that it could not have been more than a trivial and inconsequential amount. No. 10, as follows: The plaintiff suffered considerable loss by reason of the defendants' competition. Defendants': No. 7—There is no evidence that any of the door-to-door enumerators copied any names, listings or other material from the plaintiff's directory. No. 9 is affirmed with the qualification that not all of Miss Jones' additions were made in this way. Nos. 12, 13, and 14—I believe that there were some listings other than the trap listings in the plaintiff's book which were copied by the defendants. The extent of this copying was trivial and inconsequential. See discussion. Nos. 18 and 19—I cannot affirm these as stated. It is a fact that there are some streets listed in the plaintiff's directory which are not found in the defendants' and some listed in the defendants' which are not in the plaintiff's. The figures given in the requests are much too large. No. 22—Affirmed with the elimination of the words "any other or of".

### Conclusions of Law.

I affirm the plaintiff's conclusions of law to the extent that the fact that the trap listings in the plaintiff's book appear in the defendants' book creates a prima facie case of copying by the defendants, which they were bound to meet. I do not agree that, if the defendants' evidence established that all of their book except a very small number of listings was the result of their original work, a finding of infringement must be made merely because they failed to produce evidence to explain the appearance of the trap listings. I deny the plaintiff's 4th and 5th requests.

I affirm the following of the defendants' requests for conclusions of law: Nos. 1, 3, 4, 5, 6, and 7. No. 2 is affirmed as follows: Although there is evidence of some copying by the defendants, any inference that it was substantial is negatived by the evidence produced by the defendants.