### MARKHAM v. A. E. BORDEN CO., Inc. et al.

No. 51–1010.

United States District Court
D. Massachusetts.

Nov. 21, 1952.

LaRue Brown, Raymond E. Bernard, of Brown, Field & McCarthy, Boston, Mass., for plaintiff.

Irving U. Townsend, Jr., of Emery, Booth, Townsend, Miller & Weidner, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This is an action for copyright infringement brought under the provisions of Title 17 U.S.C.A., in which the plaintiff seeks the customary relief of damages, an injunction, and an accounting of profits. A count for unfair competition is also added to the complaint.

### Findings of Fact

The plaintiff, C. R. Markham, a citizen of the State of Illinois, is engaged in the advertising business in that state under the name of C. R. Markham Advertising. As part of that business Markham produces trade catalogs and illustrated price lists for refrigeration equipment wholesalers.

The defendants in this cause are: A. E. Borden Co., a corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business in the City of Boston; Adrian C. Borden and Chester E. Borden, citizens of the Commonwealth of Massachusetts, who re-side in the City of Newton; and Sherwin T. Borden, a citizen of this Commonwealth whose residence is in the City of Worcester.

The defendant corporation (hereinafter referred to as Borden) is a wholesaler and manufacturer representative for refrigeration and air-conditioning equipment in the Greater Boston and adjacent area.

Beginning sometime prior to January 19, 1945, and continuing up to July 30, 1948, the plaintiff compiled, published, and copyrighted thirty-nine advertising catalogs which are set forth in the bill of complaint by title and marked therein as Exhibits 1 through 39. Each of these catalogs was licensed by Markham to a wholesale dealer of refrigeration parts and supplies to be used by it in the conduct of its business. The copyright on the various catalogs at all times remained in the name of C. R. Markham.

The plaintiff claims that Borden infringed the copyrights for each one of these thirty-nine catalogs in the compilation, publication, and customer distribution of two of Borden's advertising catalogs designated (and hereinafter referred to) as B-48 and C-50.

From the testimony adduced at the trial and the documentary evidence presented in this case it appears that Borden, whose business consists in selling at wholesale to installing contractors in the refrigeration and air-conditioning fields and the persons who service and repair this equipment, had established a practice as early as 1945 of furnishing gratuitously to its customers an over-all catalog in order to inform them of the various items which it kept in stock. These catalogs usually became obsolete after two years and were replaced by newer up-to-date editions. Borden compiled and distributed catalogs in the years 1945, 1948, and 1950. The 1948 and 1950 editions, namely the B-48 and the C-50, are the catalogs complained of in this action.

In 1947 Borden hired one Edward Owen & Co. (hereinafter called Owen) an advertising firm in Hartford, Connecticut, to perform the work on the B-48 catalog. Borden supplied Owen with various materials to be used in compiling the catalog, includ-

ing its 1945 catalog, current manufacturers' catalogs, and jobbers' sheets. Borden would then advise Owen's man, one George W. Salzer, as to which of the manufacturers' items it carried so that they could be incorporated into the B–48 catalog. Other material which was not available at the Borden Company's office was obtained by Salzer directly from the manufacturers.

The B–48 job was completed sometime in June, 1948, and by the middle of July, 1948, most of the catalogs had been received by Borden and distributed to its customers.

Prior to the publication, receipt, and distribution of the B–48 by Borden, the latter received notice of complaint by the plaintiff about its contents, so that if this Court finds that catalog guilty as charged, any subsequent publication of it would be equivalent to infringement occurring after actual notice to the defendant within the terms of Title 17 U.S.C.A. § 101.

In response to this warning minor changes were made in the composition of the B–48, and that catalog in the form in which it finally was printed and distributed has been marked as the defendant's Exhibit R in this case.

Whether these changes were executed by Owen alone or whether they were made by Owen at the request of and with the assistance of Borden cannot be determined.

The B–48 catalog became obsolete by the end of 1949, and at that time Borden made arrangements for production of the C–50. This job was given to a Boston catalog-producing firm called Topping House. The actual work of compilation was carried on entirely in the offices of the Borden Company. In many instances the content of C–50 is similar to that of B–48, the former being in substance a revision of or bringing up-to-date of the latter. C–50 was completed and distributed in the late spring or early summer of 1950.

After a careful perusal of the catalogs of the plaintiff and the defendants in this case, I find that, viewing the Borden catalogs B–48 and C–50 each in its physical entirety, the average reasonable man on due consideration would not fail to note that since similarities appear in both catalogs one must have lifted material from the other. I find that such similarity as does exist between the Markham and Borden catalogs is not due to coincidence but is the result of lifting the plaintiff's material.

This finding is compelled by the presence of several "Chinese Copies" [1] and at least two common errors [2] in the defendant's catalogs. When to this is added the numerous instances where the defendant has taken the identical language used by the plaintiff in its descriptive texts and modified it, changing the order of sentences, or breaking up and transposing clauses, we feel confident that our finding is well founded in fact.

See cases holding that the reproduction of errors is strong proof of copying. Sub-Contractors Register v. McGovern's Contractors & Builders Manual, D.C., 69 F. Supp. 507; R. R. Donnelley & Sons Co. v. Haber, D.C., 43 F.Supp. 456, and cases cited therein on page 458.

See also cases holding that in those instances where similarities between two works are striking, access need not be directly proven, but may be inferred, Arnstein v. Porter, 2 Cir., 154 F.2d 464; Contemporary Arts v. F. W. Woolworth Co., D.C., 93 F.Supp. 739.

1. The following items are examples of "Chinese Copies".

| | | |
|---|---|---|
| "J–5" Electric Flow Switch | Exhibit 4, page 34 | B–48, page 10 |
| Handy Wide Range Flaring Kit | Exhibit 4, page 121 | B–48, page 57 |
| Standard Liners | Exhibit 8, page 74 | B–48, page 69 |

2. The two common errors are:
 (a) Use of the word "protane" for propane in the advertisement for Gasoila Sealing Compound. This error appears in Exhibit 2, page 90, and in the B–48 and C–50 catalogs on page 90 and page 72 respectively.
 (b) Use of the decimal 10.7 for 10.75 in the advertisement for Standard Liquid Receiver. This item appears in Exhibit 4, page 26, and in the B–48 catalog, page 110.

The defendant contends that the greater part of the similarities are due to the fact that both the plaintiff and the defendant used common source material in producing the copy for these items. In furtherance of this contention the defendant has introduced in evidence two batches of material accompanied by lists and marked as Exhibits N and O and Lists A and B. List A enumerates items claimed to have "exact verbatim manufacturer and other free sources". The manufacturer's material referred to is supplied under Exhibit N. List B sets out "Borden items only slightly similar to corresponding Markham items and derived from manufacturer's sources". The actual manufacturer's sources were marked in a batch at trial as Exhibit O.

We have scrutinized this material, making detailed comparisons between the Markham and Borden catalogs and the alleged source material. Our conclusion is that several of the items contained in List A[3] and a few of the items contained in List B[4] were compiled for the defendant's B-48 and/or C-50 from the source material introduced in evidence by the defendant. This rebuts the prima facie case made out by the plaintiff in respect to these particular items. However, I find that the defendant has failed to offer a satisfactory explanation as to the remainder of the items comprising List A and List B and that the inference that they were lifted from the plaintiff's catalogs still remains. See R. R. Donnelley & Sons Co. v. Haber, 43 F.Supp. 456.

At the trial of this case the defendant has attempted to establish the fact that if there was an illegal copying of the plaintiff's catalogs such copying was done by Owen, its compiler, and not by Borden. The plaintiff, on the other hand, has tried to create the opposite impression by introducing evidence tending to show that Borden supplied all of the material to be used by Owen in compiling the B-48. In our view of this case it is not necessary to go into this controversy since even if Owen is the guilty one, still Borden would be liable as a distributor of an infringing publication. See Detective Comics, Inc., v. Bruns Publications, D.C., 28 F.Supp. 399; American Code Co. v. Bensinger, 2 Cir., 282 F. 829.

## Discussion

 Because this case has taken so long to try and has been subject to much research this discussion will be of greater length than is ordinarily necessary. At the outset I am of the opinion that the plaintiff's catalogs contain the degree of originality required by the law and that they are copyrightable. There has been much duplication in the plaintiff's own thirty-nine catalogs as will appear later when we are discussing the law. At the outset the defendant raises the contention that the plaintiff's Dennis Catalog (Exhibit 39) and the Joplin Catalog (Exhibit 9) are in effect and fact duplicates of the Superior Catalog (Exhibit 20) and the Nelson Catalog (Exhibit 8) also owned by the plaintiff, and that the former in each case being duplicates coming later than the originals were not copyrightable. 17 U.S.C.A. § 7 provides that "Compilations * * * or other versions of works in the public domain or of

3. List A items taken by the defendant from Manufacturers' sources and not copied from the plaintiff's catalogs:
 - Starting load regulator valve
 - Chicago seals
 - Chicago valve plates
 - Imperial pinch-off
 - Calibrated tube bender to 1/2"
 - Calibrated tube bender 5/8" and 3/4"
 - Swift pulleys, single groove
 - Swift pulleys, double groove
 - Oil separators
 - Miniature wrench set
 - Box wrench set

4. List B items taken by the defendant from manufacturers' sources and not copied from the plaintiff's catalogs:
 - Shafts – Seals
 - Rods – Piston
 - Rings – Pins
 - Valve Plates and Reeds

copyrighted works when produced with the consent of the proprietor of the copyright in such works, or works republished with new matter, shall be regarded as *new works subject* to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or to secure or extend copyright in such original works."

Under this section it would seem that it is necessary for the plaintiff to sustain adequate new matter in every one of its catalogs to entitle it to the protection afforded by its terms. In my opinion, the plaintiff has not done that in respect to Dennis and Joplin, for each of these catalogs is substantially identical with its earlier counterpart, i. e. Superior and Nelson. It is true that neither Section 7 nor any other provision of the Act expressly provides that duplicate copyrights shall be void. However, as is shown by several decisions, such a result is demanded by a sensible construction of the entire act, its purposes and its aims.

See Caliga v. Inter Ocean Newspaper Co., 215 U.S. 182, 30 S.Ct. 38, 54 L.Ed. 150; Miller v. Eagle Mfg. Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121; West Publishing Co. v. Edward Thompson Co., 2 Cir., 176 F. 833; Andrews v. Guenther Publishing Co., D.C., 60 F.2d 555; Adventures in Good Eating v. Best Places to Eat, 7 Cir., 131 F.2d 809.

The Caliga case, supra, held that the attempted duplication of an existing copyright in a painting by depositing the same photograph of the same painting under a new title and with but a slight change in description was void and could not be made the basis of a suit for infringement.

In each of the cases under discussion, there was substantial, if not total, duplication, to the extent that one catalog is necessarily a copy of the other, and the law of course will not grant a copyright to a work which is merely a copy since it lacks originality.

In this case we do not have any evidence as to which of the two catalogs is the original and which is the copy. However, we must hold that as there cannot be two copyrights on substantially identical material, one must be void. Since the plaintiff has not disputed the defendant's contention that Dennis is the duplicate, and further since the application and affidavit for Superior were the first filed (see Exhibits 43T and 43MM) I feel that the copyright on Dennis should be the one to be declared void by this Court.

In accordance with the foregoing it is my opinion that the copyrights on both Joplin and Dennis are void and cannot support an action of infringement. Consequently, the complaint should be dismissed as to these two items. Clearly McCombs (Exhibit 24), the first major compilation by Markham in the catalog series in evidence, is a valid copyright, and it would appear that each subsequent copyright in chronological order Exhibits 1–38, excepting Exhibit 9, has sufficient new material added over previous copyrighted catalogs to be in itself a valid copyright.

■ I am not persuaded by the defendant's contention that the copied copyrights are likewise void because of the attempted duplication. I do not think that Sieff v. Continental Auto Supply, D.C., 39 F.Supp. 683, is authority for this proposition and even if it were it is not necessary to follow it to reach the conclusion that is being reached in this case. See also Bentley v. Tibbals, 2 Cir., 223 F. 247, 253.

To allow the plaintiff to recover damages in this case on the theories of liability advanced by it in support of its claim would do violence to a sound construction of the copyright statute and open the door to unrealistically inflated claims in the future. Whether intentionally in an effort to multiply infringements or otherwise, it has grossly overstated its claim. This overstatement, grounded as it is on erroneous interpretations of the statute, has so permeated the plaintiff's cause and dictated the form of the pleadings and presentation of the evidence that we cannot separate the good from the bad in an effort to salvage

what there is of the former, if any. Consequently, the plaintiff's entire case must fall.

In its complaint, the plaintiff pleads thirty-nine different catalogs by title, claiming that the defendant has intentionally copied some portions of all thirty-nine in the composition and publication of its B–48 and C–50 catalogs. The catalogs, whose publication dates range from January 1945, to July, 1948, are set out without chronological order or other logical sequence. The listing begins with the Joseph Simons Co. Catalog, May 27, 1947, and ends with the Dennis Refrigeration Supply Catalog, May 19, 1947. This discursive manner of pleading the catalogs is frowned upon by this Court. Such a procedure, if not a deliberate attempt to lay the groundwork for an exaggerated claim, at least has the effect of greatly confusing the case and adding to the oppressive burden of both this Court and the defense.

■ After the order issued by the Court on November 2, 1951, requiring the plaintiff to specify exactly what subject matters of the defendant's B–48 and C–50 catalogs infringe the plaintiff's copyrights, the plaintiff filed a document entitled "detailed analysis of alleged copyright infringements" which lists the various items in the plaintiff's Exhibits 1–15 which it claims have been appropriated by the defendant in its B–48 and C–50 catalogs. No claim of infringement is made with respect to the jackets of the plaintiff's catalogs or the index pages. Supplemental material has also been filed purporting to list the items in the remainder of the catalogs (Exhibits 16–39) alleged to have been copied by the defendant and to set out claimed infringements by the defendant which are non-duplicating in the plaintiff's list of violations. In this manner the plaintiff has particularized its claim and is of course restricted in this cause to those alleged itemized infractions.

After a close inspection of the "detailed analysis" and the supplementary material above referred to, it is my opinion that the greater bulk of the items therein contained cannot be utilized to support a charge of infringement since they require for their support an erroneous construction of the copyright statute and decisions.

■ The great majority of the items cited by the plaintiff in its "detailed analysis" are common to or repeated in more than one of its catalogs. In many instances the items are standard to the entire catalog group, being repeated throughout the thirty-nine catalogs. From the very nature of things it is impossible for the defendant to have copied any of these repeat items more than once, from more than one place in the production of its B–48 and C–50 catalogs. Consequently, these repeated items can be cited but once by the plaintiff in respect to each of the defendant's two publications, and their repetition cannot have the effect of increasing the defendant's liability. In declaring that this is the only sound construction to be accorded the copyright laws the Court is persuaded as follows.

■ It is an undisputed principle of the copyright law that there can be but one valid and subsisting copyright on any particular subject matter or work, or component part thereof. West Publishing Co. v. Edward Thompson Co., 2 Cir., 176 F. 833; Adventures in Good Eating v. Best Places to Eat, 7 Cir., 131 F.2d 809; Andrews v. Guenther Publishing Co., D.C., 60 F.2d 555. A necessary corollary of this proposition is that each such copyright can be infringed but once in a given publication. Section 7 of Title 17 U.S.C.A. reads in pertinent part "Compilations or abridgements * * * or works republished with new matter, shall be regarded as new works subject to copyright under the provisions of this title; but the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works, or *to secure or extend copyright in such original works.*" (Emphasis supplied.)

■ The Markham catalogs come within the terms of this section as compilations or new matter republications. Consequently, only what is newly or additionally presented

in each catalog is newly copyrighted. The subsisting copyrights on matter which is repeated are merely protected, not extended or renewed. Freedman v. Milnag Leasing Corporation, D.C., 20 F.Supp. 802.

■ Such repeat Markham items carry but one copyright, and as a result they could be infringed but once if at all by the defendant in each of its separate publications.

■ Of the eight hundred odd items cited by the plaintiff as having been copied by the defendant in its B–48 and C–50 catalogs six hundred and ninety-odd items are repetitions of items previously cited. Also the itemized list of extracts allegedly appropriated from the plaintiff's catalogs, Exhibits 16 through 39, duplicate infractions previously claimed by the plaintiff in its "detailed analysis". In accordance with the principles enumerated above, all of these vast repetitive references must be eliminated from the plaintiff's claim. The complaint will be dismissed as to them. This leaves a balance of one hundred sixteen alleged infractions.

As previously found, the plaintiff has supplemented its "detailed analysis" with a list of claimed infringements by the defendant's catalogs B–48 and C–50 which are non-duplicating in the plaintiff's catalogs 1 through 15. Possibly this document was designed to meet the probability of this Court's ruling that there is but one copyright on all subject matter common to two or more works and that as a result for each piratical publication there is but one infringement thereof.

Accordingly, in this supplemental material the plaintiff has supposedly eliminated all repeat citations which appear in its "detailed analysis". Consequently this document contains the one hundred sixteen items mentioned above. From this total the ten following items must be eliminated for the reasons set forth. Referring first to the plaintiff's list of claimed infringements by the defendant in the B–48 catalog:

*Exhibit 2*—Page 9—*Emergency Capacitator*—This item has been previously claimed in Exhibit 1 under the Title of "Emergency Selectors."

*Exhibit 6* —Page 42—*Cast Iron Pulleys* (Single Group), *Cast Iron Pulleys* (Double Group). In Exhibit 1 the plaintiff cites the item entitled "Valve Manifolds" as appearing on page 48. There is no such item on page 48. Checking back on the plaintiff's "detailed analysis" we see that the plaintiff claims matter appearing on page 115 of the defendant's B–48 catalog as infringing its copy on page 48 of Exhibit 1. Since "Swift Fan Blades and Pulleys" appears on both page 48 of Exhibit 1 and page 115 of B–48 we assume that the plaintiff has committed an error in designation and really intends to claim these items in Exhibit 1. Since the defendant's citation in Exhibit 6 duplicates this matter it cannot be claimed again there.

*Exhibit 14*—Page 33—*Aerovox Electrolytic Replacement Capacitators*. This item has been previously claimed in Exhibit 1 under the title of "Capacitator Replacements".

Referring now to the plaintiff's listing of claimed infringements by the defendant in C-50 catalog:

*Exhibit 4*—Page 34—*Type "K" Automatic Expansion Valves*. This item has been previously claimed in Exhibit 2 under the title of "Automatic Expansion Valves."

*Exhibit 4*—Page 116—*Box Wrench Set (No. 36 Set)*. This item has been previously claimed in Exhibit 3 under the title of "Box Wrench Set".

*Exhibit 9*—*All Four Items Set Forth*—This catalog has been declared void for duplicate copyrighting without sustaining adequate new matter.

■ It is the position of the plaintiff in this case that one publication by a defendant may infringe several copyrights owned by a single proprietor, and further that separate publications by the same person of the same infringing matter could constitute as many infringements as there are publications. With these contentions we are in strict accord, Burndy Engineering Co. v. Sheldon Service Corp., D.C., 39 F.Supp. 274; L. A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499; Lindsay & Brewster, Inc., v.

**704**

Verstein, D.C., 21 F.Supp. 264; and it is conceivable that both the defendant's B–48 and C–50 catalogs might separately infringe any given number of the plaintiff's catalogs depending on the evidence educed by the plaintiff as to the facts and the presentation of its case in accord with the law. However, by no stretch of the imagination can we concur in still another proposition advanced by the plaintiff to the effect that each of the one hundred and sixteen alleged instances of copying by the defendant (this number has now been cut down to one hundred and six by the Court) in and of itself constitutes a separate infringement. That the plaintiff labors under such an erroneous impression is seen from its brief on final argument wherein the plaintiff after computing the number of citations in its supplementary material at one hundred and sixteen, then claims that for each one he is entitled to at least the statutory minimum of $250, an award of $29,000 in all.

■ In order to constitute an infringement it is necessary that there be a material and substantial copying of the copyrighted work of another. Perris v. Hexamer, 99 U. S. 674, 676, 25 L.Ed. 308; Folsom v. Marsh, 9 Fed.Cas.No.4, 901, page 342; Wilson v. Haber Bros., 2 Cir., 275 F. 346; Dymow v. Bolton, 2 Cir., 11 F.2d 690; Roe-Lawton v. Hal E. Roach Studios, D.C., 18 F.2d 126; Mathews Conveyor Co. v. Palmer-Bee Co., 6 Cir., 135 F.2d 73; Perkins Marine Lamp & Hardware Co. v. Goodwin Stanley Co., D.C., 86 F.Supp. 630; R. L. Polk & Co. v. Musser, D.C., 105 F.Supp. 351.

■ This test consistently applied by the Courts necessarily implies that not every single isolated instance of copying in and of itself constitutes a separate infringement, but that in any given case the Courts decide whether there has been an infringement on the basis of the quantity and quality of the copying considered as a whole.

■ In other words, infringement is a wider term than copying. For each copyrighted work there can be but one infringement no matter what the amount of copying

therefrom by a defendant in a given publication. See The Journal of Commerce, etc., v. Boston Transcript Co., D.C., 292 F. 311, where the Court held that the unlawful reproduction in one issue of the defendant's paper of several passages from one issue of the plaintiff's paper constituted only one infringement under the statute.

■ In the present case the plaintiff has committed the error of abstracting from the group of catalogs every alleged instance of copying and labelling it a separate infringement. Each catalog must be considered as a distinct entity on the question of infringement, with reference being made to its entire contents in relation to the portion allegedly expropriated in an effort to ascertain if what is copied is material and substantial.

On application of these principles to the present case we find that at the very most there could be but seventy-eight infringements, i. e., the number of plaintiff's catalogs (thirty-nine) multiplied by the number of alleged infringing publications (two).

However, as we shall presently see, the plaintiff, through defective analysis of the copyright law, and consequent failure to present properly the evidence in this case has not made out to the satisfaction of this Court even one actionable infringement.

■ In a case like the present one, which involves claimed infringement of several works whose content to a large degree is identical or standard, the Court must be careful to prevent the plaintiff from arbitrarily multiplying infringements, and thus compelling a defendant to pay damages greatly disproportionate to its actual wrongdoing.

What there is in the nature of case like the one under consideration which engenders unrealistic claims may be seen from the following.

■ Under the copyright statutes, matter on which a person has secured a copyright may be repeated or carried over into a new work on which a new copyright may be obtained provided sufficient new material is combined with the old. See § 7 of Title

17 U.S.C.A. This process may be carried through a whole series of publications.

When that is the case, if an infringer copies items from one of the many publications which are common to the entire series, then it may be difficult, if not impossible, for the copyright owner to point to a particular publication as the one from which the defendant actually copied. However, under these circumstances the copyright owner could base his claim on any one of the copyright publications and the infringer could not defend by introducing in evidence an earlier publication and claiming that the copyright on the duplicated matter subsists in it. See Adventures in Good Eating v. Best Places to Eat, 7 Cir., 131 F.2d 809, 813. In such a case, the plaintiff would be seeking to hold the defendant accountable for only one infringement, and the difficulty of allocating plagiarized matter to a particular publication would not be encountered.

If, on the other hand, the defendant, in addition to copying the standard items, had also copied other items which are exclusive to the different publications and not repeated or duplicated in the series, then perhaps the plaintiff by showing a certain juxtaposition of the standard items to the non-repeated items could make out the fact that some of the repeat items were copied from one and others from another of the plaintiff's catalogs. If so, the plaintiff would then be entitled to recover damages for several infringements, depending upon the facts of the case. See Burndy Engineering Co. v. Sheldon Service Corp., supra.

However, it is another case entirely when a complaining copyright owner replete with a whole series of publications in which a great proportion of the copy is identical makes an arbitrary and unrealistic assignment of allegedly pirated items to the various publications in an effort to capitalize on the actions of an accused infringer. Where this happens the Court will be astute to trace every item so assigned back to its origin in the publication in which it first appeared. To neglect to do so would allow a plaintiff to take the bulk of the standard items and allocate them to each one of its publications, making sure that a sufficient amount of such items will be so allocated as to constitute a material and substantial portion of each publication and a consequent infringement thereof.

To illustrate this point, let us assume that a catalog compiler publishes a catalog containing one hundred and fifty items. Subsequently he publishes ten more catalogs repeating in each one hundred items of the one hundred and fifty contained in the first publication together with adequate new matter to entitle him to a copyright for each of the ten editions. Suppose now a wholesale copying of the one hundred standard items by a defendant. The plaintiff then could introduce in evidence the first publication against which the Court would measure the materiality and substantiality of the copying and most likely conclude that there had been one infringement. Thereafter, these items could not be assigned to the ten other catalogs for the purpose of making out an infringement of each.

On the other hand, suppose the plaintiff, proceeding upon a different theory, neglected to accuse the defendant of wrongful appropriation from the first publication, but instead built its case around the one hundred items first appearing therein by allocating ten to each of the subsequent catalog editions, a sufficient amount in the plaintiff's opinion to constitute a material and substantial proportion of each catalog. The plaintiff would then claim that the defendant had committed ten infringements in its one piratical publication; a burden which in the opinion of this Court is entirely unrelated to the defendant's wrongdoing. See Schellberg v. Empringham, D.C., 36 F.2d 991, 996, 997. Under such circumstances a Court on the question of infringement would be justified in disregarding the presence of these standard items in all catalogs subsequent to the one in which they originally appeared. No principle of law or justice would compel it to reconstruct the plaintiff's case, revising the list of alleged infractions and re-allocating the various accused items to the publication of their

first appearance in an effort to grant some measure of success to the plaintiff's day in Court. Since the plaintiff had particularized its case, it could not expect to receive damages for something it did not claim.

These same principles apply to the case where a new item appearing for the first time in a later catalog edition and repeated thereafter in still later editions is not claimed by the plaintiff to have been extracted from the catalog in which it first appears, but is cited for accusation in one of the later catalogs in which it also appears.

The plaintiff in the instant case has taken the course of action which the foregoing forbids. This fact is verified first by a careful examination of the nature and scope of the Markham catalog series as a whole, then by an examination of each catalog with a view to discovering its date of publication, the items alleged to be copied therefrom, whether or not they are common to or standard in more than one catalog, whether they make their first appearance in the instant catalog, and if not, in what catalog edition they actually first appear. Most of this information is supplied by the defendant's large chart which is a visual presentation of the actual occurrence of the seventy-odd accused items in the entire catalog series.

The chart demonstrates that as far as complained-of item content is concerned the McCombs 1946 catalog is the parent publication of the thirty-nine catalog series, since this is the earliest compilation in which a majority of the accused items appear. The bulk of these accused items is carried over from McCombs and repeated in one or more subsequent catalog editions with little or no change. Indeed, in many instances, the items are standard throughout the entire catalog series.

Focusing now on the accused item content as a whole we notice in most cases but slight changes from one catalog to another in the form of the deletion or addition of a few items. This points to the conclusion that at least insofar as the allegedly pirated copy is concerned, the plaintiff's catalog series represents no more than varying arrangements or abridgments of the 1946 McCombs catalog. When a new accused item or group of items appears in a catalog subsequent to McCombs for the first time, it in turn is duplicated or repeated in subsequent catalog editions. Against this factual background the plaintiff has built its case, and accused the defendant of plagiarizing a substantial quantity of its catalog copy. Reference to the list of infractions submitted by the plaintiff and to the defendant's large chart requires us to agree with the defendant's contention that the plaintiff "in particularizing the alleged infractions in this case skipped about here and there in the catalog group, picking this and that item for accusation without rhyme or reason as to the first publication for any given item."

A striking example of this procedure is furnished by a consideration of the matter appearing in catalog Exhibits Nos. 8 and 9 which is cited in the plaintiff's "detailed analysis" as having been infringed by the defendant. As we have stated above, these two catalogs are identical works, yet the plaintiff in itemizing the various accused items has listed entirely different copy in respect to each catalog; the intended inference being that the defendant has copied certain items from one and certain other items from the other of the two identical publications.

Throughout Appendix A (i. e., the list of claimed infringements in which repeat citations are eliminated) the plaintiff has further resorted to the practice of arbitrarily dividing up and allocating standard items to various catalog editions without regard to their origin. Of the one hundred-odd citations therein of alleged piracy in the B–48 or C–50 catalog or both, some fifty-three citations are attributable to items which first appeared in McCombs 1946 catalog and were republished without change in the particular catalog from which the plaintiff claims they were lifted. Three of the citations are of items brought forward without change from the plaintiff's 1945 Fred C. Kramer Co. catalog.

Nineteen more citations represent items which initially appeared in McCombs or

Kramer, but appear in somewhat modified form in the catalogs in which they are claimed. However, these changes in item format had been fully executed in earlier catalogs and the items thereafter were repeated in identical form in the catalog of their accusation. Twenty-two of the citations are of items which made their appearance subsequent to McCombs but which are not claimed by the plaintiff in the catalog in which they were first published.

All of these citations, a total of ninety-seven out of one hundred and six, contained in Appendix A, must be eliminated from the plaintiff's cause of action in furtherance of the principles previously enumerated. This leaves nine citations to be dealt with.

I find that the plaintiff's citation of each one of these items is valid, as conforming to the principles and norms insisted upon by this Court. The defendant's list A and list B which purport to enumerate items which have come directly from manufacturers' sources or other free sources do not include any of these nine items; nor does the defendant offer elsewhere any satisfactory explanation for their incorporation into its B–48 or C–50 catalogs. Consequently, the plaintiff is entitled to recoup damages for their wrongful appropriation by the defendant if this Court concludes that such appropriation amounts in other respects to an "infringement" according to the legal connotation of that term.

 In order to constitute an infringement of a copyright it is necessary that a material and substantial part of the work be copied. Cases construing this test have held that to constitute a "material and substantial" taking it is not necessary that the whole of a work should be copied, or even a large portion of it, Folsom v. Marsh, 9 Fed.Cas.No.4,901, pages 343, 348; it is not a question of quantity alone, but also of quality and value, Falk v. Donaldson, C.C., 57 F. 32, 35: "If so much is taken, that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another, that is sufficient, in point of

law, to constitute a piracy pro tanto". Folsom v. Marsh supra [9 Fed.Cas.No.4,901, page 348].

In the case of M. Witmark & Sons v. Pastime Amusement Co., D.C., 298 F. 470, the Court said at page 476—"To constitute infringement it is not necessary that the whole, or even a large portion, of the work shall have been copied, and on the principle of 'de minimis non curat lex' it is necessary that a material and substantial part of it shall have been copied; it being insufficient that mere words or lines have been abstracted. Between these extremes no precise and definite rules can be cited. * * * It has been said that in deciding questions of this sort the court must look to the nature and objects of the selections made, the quantity and value of the materials used, and the degree in which this may prejudice the sale, diminish the profits, or supersede the objects of the original work."

 In cases dealing with copyrights on compilations such as directories or trade catalogs the Courts appear to stress the element of quantity in applying the "material and substantial" test to the facts of the case, since it is extremely difficult, if not impossible under the circumstances to evaluate among items insofar as their qualitative importance is concerned. R. L. Polk & Co. v. Musser, D.C., 105 F.Supp. 351; Perkins Marine Lamp & Hardware Co. v. Goodwin Stanley Co., D.C., 86 F.Supp. 630; Sieff v. Continental Auto Supply, D.C., 39 F.Supp. 683; Lindsay & Brewster, Inc., v. Verstein, D.C., 21 F.Supp. 264; Mathews Conveyor Co. v. Palmer-Bee Co., 6 Cir., 135 F.2d 73; Da Prato Statuary Co. v. Giuliani Statuary Co., C.C., 189 F. 90. This Court will follow the authority of these cases in the determination of this issue.

Before we can apply the "material and substantial" test to the evidence we must first consider each one of the nine items under consideration as belonging to and as part of the general mass of a particular catalog, since whether or not certain facts constitute an infringement must be resolved by examination of one copyrighted work with

this process being repeated in respect to each catalog alleged to have been infringed. Accordingly, the following table sets forth the pertinent data.

I Items Alleged to be Copied in the Defendant's B–48 Catalog

| Page | Catalog | Item |
|---|---|---|
| 111 | White Refrigeration Supply Inc. 1947–48, Plaintiff's Exhibit No. 12 | Safe-T-Grip Fuse Puller |

Il Items Alleged to be Copied in the Defendant's C–50 Catalog

| Page | Catalog | Item |
|---|---|---|
| 15 | Joseph Simons Company 1947, Plaintiff's Exhibit No. 1 | Solenoid Valves for Feron, Methyl, Brine, Water |
| " | " " " | Types "M6" and "M3" |
| " | " " " | Type "RI" Solenoid Valves for Feron, Methyl, or Ammonia |
| " | " " " | "R6" and "R2" Large Capacity Valves |
| " | " " " | Alco Solenoid Valves for Ammonia Only. Types "M9" and "M8". |
| 58 | Illinois Electric Works 1947, Plaintiff's Exhibit No. 2 | T6Z Thermo Valve |
| " | " " " | Automatic Expansion Valves |
| 8 | N. O. Nelson Co., Plaintiff's Exhibit No. 8 | Replacement Power Assembly |

▆ The extent of copying from the plaintiff's Exhibits Nos. 12, 2, and 8, is infinitesimal in relation to the total amount of material used by the defendant. The copying of one or two cuts or panels from a catalog falls short of the appropriation of a material and substantial part thereof. See R. L. Polk & Co. v. Musser, D.C., 105 F. Supp. 351; Mathews Conveyor Co. v. Palmer-Bee Co., 6 Cir., 135 F.2d 73, 85, and Sieff v. Continental Auto Supply, D.C., 39 F.Supp. 683, 689.

Consequently, I find and rule that the defendant has not infringed these catalogs.

▆ Exhibit No. 1 presents a much closer case in respect to the defendant's appropriation therefrom. In the defendant's C–50 catalog this material constitutes five cuts which cover almost the entire area of one page. This catalog is comprised of one hundred and forty-two pages in all. These same five cuts cover a complete page in the plaintiff's Exhibit No. 1 which is a catalog of approximately one hundred pages.

In many cases appropriation of material to the degree involved here could be ruled an infringement. But when we consider the nature of the present copyrighted work, the fact that they are compilations of data readily available to those in the trade and require no high degree of originality for their composition, I find that the labors of the plaintiff in creating Exhibit No. 1 have not been substantially to an injurious extent appropriated by the defendant, and consequently that the defendant has not committed an infringement of that catalog. Mathews Conveyor Co. v. Palmer-Bee Co. cited supra.

From the foregoing I conclude and rule that even though the defendant might be found to be guilty of appropriating a substantial quantity of the plaintiff's copyrighted material, yet the plaintiff has failed

to show itself legally entitled to recover any damages therefor.

There is some question whether the plaintiff, although disqualified to assert a claim to damages in this case, might nevertheless be entitled to an injunction to prevent the defendant from making further use of its copyrighted material. Section 101 of the Statute, Title 17 U.S.C.A. reads "If any person shall *infringe* the copyright in any work protected under the copyright laws of the United States such person shall be liable: * * * To an injunction restraining such infringement". In the present case the plaintiff has failed to make out an infringement to the satisfaction of this Court. Whether despite this fact it should issue an injunction need not be decided because of other significant facts in this case.

In affidavits filed by Chester E. Borden, Vice-President and Treasurer of the defendant corporation, and Robert C. Lee, General Manager of that corporation, it is alleged that the B–48 catalog is obsolete, having been superseded by C–50, and that C–50 is now out of print. These affidavits specify further that the C–50 catalog became exhausted several months before trial and that no more copies of that catalog are on order or will be ordered by the defendant since much of the information therein is now obsolete, and C–50 will be superseded by a 1952 catalog.

■ An injunction to restrain copyright infringement is not automatic and where the infringement has come to an end before suit is commenced and there is little likelihood or danger of its renewal at any time in the future, an injunction will be denied. See Sheldon v. Moredall Realty Corporation, D.C., 22 F.Supp. 91; Vitaphone Corporation v. Hutchinson Amusement Co., D.C., 19 F.Supp 359; 18 C.J.S., Copyright and Literary Property, § 130, page 243. In West Publishing Co. v. Edward Thompson Co., C.C., 169 F. 833, 864, the Court indicates that where an infringing publication had become no longer a salable book at the time suit for infringement was instituted, having been superseded by later works at

that date, the plaintiff was not entitled to an injunction.

■ In accordance with these principles this Court will deny injunctive relief to the plaintiff in this case.

■ Also included in the plaintiff's prayer for relief is the request that the defendant be required to recall from circulation all copies of B–48 and C–50 and to deliver them up for destruction together with "all type, cuts, plates, molds, and other matter for making" these catalogs. Both Borden and Lee in an affidavit state "the defendant does not now and never has owned or possessed any plates, molds, matrices, or other printing means for making copies of either Catalog B–48 or Catalog C–50; any such material used for producing B–48, if now existing, is with the catalog publishing firm located in 1948 in Hartford, Connecticut; as to Catalog C–50, such materials, if existing, are in the hands of the printer and the defendant has no control of the same."

We think that § 101 of Title 17 U.S.C.A. requires for its application the condition that the defendant in a copyright infringement case be the owner of the infringing devices or that they be subject to his control and disposition.

The defendants Lee and Borden state that all copies of both B–48 and C–50 have become exhausted in their hands. Any such copies if presently existing are in the hands of distributors. We believe that it would place a heavy burden upon the defendant to require it to recall all these catalogs from persons to whom they were distributed from two to four years ago. Accordingly, this Court will not compel defendant to do so.

The plaintiff in this case has also added to its complaint a count for unfair competition, claiming that the defendant's acts of publishing and distributing its two catalog editions constituted unfair trade practices and unfair competition.

■ The mere act of copyright infringement does not in and of itself constitute unfair competition. There should be

some act in addition to infringement. See R. R. Donnelley & Sons Co. v. Haber, D.C., 43 F.Supp. 456. In that case the defendant in making up its catalog for use in the plumbing supply business was held to have infringed the plaintiff's copyright of a trade catalog prepared by the plaintiff for another engaged in the plumbing supply business. The Court ruled that the defendant was not also guilty of unfair competition since no acts in addition to infringement were shown such as a palming off or a confusion of the public.

■■■ Under the Massachusetts decisions the tort of unfair competition appears to be limited to the action of passing off one's own goods as those of another in the absence of the plaintiff's establishing that its product has acquired a secondary meaning. See R. P. Hazzard Co. v. Emerson's Shoes, D.C., 89 F.Supp. 211; Mann v. Parkway Motor Sales Inc., 324 Mass. 151, 85 N.E.2d 210.

In the case at bar, the plaintiff has failed to prove to the satisfaction of this Court that the defendant has engaged in activities over and above those constituting possible copyright infringement.

See the following articles and case distinguishing the statutory offense of copyright infringement from the common-law tort of unfair competition. Nims, Unfair Competition and Trade Marks, § 276, pg. 900, Ball, The Law of Copyright and Literary Property, § 143, pg. 302; West Publishing Co. v. Edward Thompson Co., C.C., 169 F. 833.

Consequently, the complaint will be dismissed as to this count.

### Conclusions of Law

■■■ 1. I conclude and rule that catalogs labelled as Exhibits Nos. 1 through 38 (with the exception of Exhibit No. 9) are valid copyrights.

2. I conclude and rule that the plaintiff has failed to make out an actionable case of infringement against the defendant.

The bill is to be dismissed.